ROSSMAN *v.* UNITED STATES (No. 107). ROSSMAN Co. *v.* UNITED STATES (No. 108).[1]

1. CHIPS OF MARBLE, CRUSHED AND SCREENED.

    Marble chips, known as marble waste, that have been crushed and screened, being thereby advanced in value and taking another name as well, are not crude mineral but manufactured articles.

2. ADMINISTRATIVE CONSTRUCTION.

    It is true administrative usage furnishes some support for the contention of appellants, that granito was free of duty under paragraph 614, tariff act of 1897, yet, it hardly appears there was such a long, uniform, and well-settled construction of the statute by the Treasury Department that the Congress can be presumed to have intended by that paragraph to declare granito, among other articles, free of duty. It was not entitled to free entry and was dutiable under section 6, tariff act of 1897.

United States Court of Customs Appeals, February 13, 1911.

TRANSFERRED from United States Circuit Court for the Southern District of New York (T. D. 29613–T. D. 29673).

[Decision affirmed.]

*Hatch & Clute* (*Walter F. Welch* of counsel) for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*W. A. Robertson* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise involved in this importation is marble chips and waste of marble quarries and shops which, by the use of proper

---

[1] Reported in T. D. 31321 (20 Treas. Dec., 324).

machinery for the purpose, has been crushed and screened, so that the resulting product is small pieces of marble of irregular shapes and different colors in three sizes. Before being subjected to these operations it is known as marble waste, and is practically worthless. Thereafter it takes the new and distinctive name of granito or terrazzo, is imported in bags, and is used in making so-called mosaic marble floors. These floors are made by sprinkling or scattering these small pieces of marble upon a mastic base, like cement, the exposed face of which is then ground or rubbed down by a machine or by hand so as to make a smooth surface. Before being used in the making of floors this product is worth from $2 or $3 to $15 and sometimes $18 or $20 per ton.

The importation was assessed for duty at 20 per cent ad valorem under section 6 of the tariff act of 1897, which is as follows:

SEC. 6. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this act, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this act, a duty of twenty per centum ad valorem.

The importers claimed the merchandise was entitled to free entry under parapraph 614 in the free list of the same act, which reads as follows:

614. Minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture, not specially provided for in this act.

The Board of General Appraisers sustained the collector, relying upon United States *v.* Graser-Rothe (164 Fed. Rep., 205), which is a decision of the United States Circuit Court for the Southern District of Ohio, and will be later referred to. The board has found amongst other things that the merchandise in the case at bar is of the same character and has been subjected to the same processes as the importations in that case. There is no evidence tending to support a claim of commercial designation of these importations, and we understand no such claim is made.

In substance the appellants here contend—

(*a*) That the merchandise is a crude mineral, namely, marble, which has not been advanced in value or condition within the meaning of paragraph 614.

(*b*) That it must have been intended by Congress that the merchandise should be classified under that paragraph because it is covered by the ordinary meaning of the words employed therein, and also because, as they claim, the statute in question and like statutes in preceding tariff acts have for a long time by Congress and the Treasury Department been uniformly construed to give free entry to merchandise like that involved in this case.

The Government claims—

(a) That the marble has been advanced in value or condition by a process of manufacture within the meaning of said paragraph; that it has acquired a new name; that it has become fitted to a new use; and that it is an article wholly or partially manufactured within the meaning of section 6 of the act of 1897.

(b) That the construction whether expressed or implied placed by Congress or the Treasury Department upon the sections involved do not cover a sufficient period of time and are not so uniform as to bring the case within the second contention of the appellants.

We consider first the claim of the importers that this is a crude mineral not advanced in value or condition by refining or grinding or other process of manufacture.

It appears that the marble before being treated as above set forth is of little or no value, and that as a result of the treatment it has a considerable value, a small part of which we understand from the record is due to expense of transportation. As the appellants so well say in their brief, the last analysis of their first point is whether or not the crushing of these marble chips and waste and screening the same is a process of manufacture.

We have been referred to numerous decisions in which the meaning of the word "manufacture" has been considered, none of which are so like the case before us as to be controlling. The word "manufacture" in its ordinary sense means to make or fashion by working on or combining material or materials. As first used it naturally involved the application of hand labor, but now, owing to greatly changed methods of developing power, may and generally does involve the element of the use of machinery in the process of manufacture.

In Hartranft v. Wiegmann (121 U. S., 609) the Supreme Court construed paragraph 268 of the act of 1870 relating to "shells of every description not manufactured." It appeared that the shells had been prepared by cleaning off the outer layer by acid, then grinding off the second layer by an emery wheel; that the object of these manipulations was simply for the purpose of ornamentation, and that the shells were to be sold as ornaments.

In discussing the meaning of the word "manufactured" the court said—

The application of labor to an article either by hand or by mechanism does not make an article necessarily a manufactured article within the meaning of that term as used in the tariff laws—

and held the importations were not manufactured—that they were still shells, and used the following significant language:

They had not been manufactured into a new and different article having a distinctive name, character, or use from that of a shell.

In the case of re Gardner (72 Fed. Rep., 494), the Circuit Court for the Northern District of California construed paragraph 511 of the act of 1890 which provided that "bones, crude, or not burned, calcined, ground, steamed, or otherwise manufactured" should be entitled to free entry. It appeared that the bones in that case had been crushed and screened. The court held, the importer's claim to the contrary notwithstanding, that crushing was equivalent to grinding within the meaning of that paragraph; that the word "manufactured" therein seemed to be given a definition by the paragraph itself different from the definition in Hartranft *v.* Wiegmann in that it appeared to regard burned, calcined, or ground bones as manufactured bones and adjudged the importation was not entitled to free entry under paragraph 511.

In the case at bar the importation has been substantially increased in value. It has been subjected to labor and mechanical treatment which has largely contributed to its increased value. It has taken a new and distinctive name which does not appear to be related to the original product and is devoted to a use to which it seems waste marble has not formerly been applied. The statute applicable seems to imply that grinding or refining are within its meaning deemed to be a process of manufacture, otherwise no force can be given to the word "other" in the paragraph.

If grinding be a process of manufacture we see no good reason for saying that crushing is not equally so. The operations are similar, the main difference being that in grinding the substance treated is more finely pulverized than is ordinarily understood to result from the crushing process. It is rather a difference of degree than otherwise.

We hold that the merchandise in this case is not entitled to free entry under paragraph 614 unless it becomes so by the force of the appellants' second contention.

By the ordinary meaning of the words employed in paragraph 614 we do not think Congress intended to apply the paragraph to marble which had been manipulated, had taken a new and distinctive name, and been increased in value as in this case, so there remains only for us to consider the claim that by reason of a long-continued and uniform construction of the paragraph by the Treasury Department giving free entry to like merchandise (if it be found to exist) these importations are entitled to be classified under paragraph 614.

In interpreting an ambiguous statute recourse may be had to the long-continued construction placed upon it by a department charged with its execution, and it is held that in such cases the courts will lean in favor of the construction given the statute by such department. Especially will this be done when contracts have been made and rights

vested on the strength of such executive construction.    Such previous departmental construction, however, is not necessarily controlling.

Assuming but not deciding that paragraph 614 is ambiguous, we proceed to examine the appellants' claim in that regard.    Preliminary to the consideration of this phase of the case it must be noted that the tariff acts of 1890 and 1894 contained provisions substantially identical with the provisions of the act of 1897, now under consideration.    It also appears from the evidence in the case at bar that the appellants first began importing granito or terrazzo about the year 1898, since which time they have made yearly quite a number of importations of the merchandise at the port of New York and some at the port of Boston.    These importations were all made subsequent to the enactment of the tariff act of 1897 and subject to its provisions.

By referring to the cases and rulings of the department to which we have been cited, and to some other cases, it appears that the Board of General Appraisers held in November, 1893, that crushed stone for macadamizing roads and other like purposes imported at Chicago, and assessed as an unenumerated manufatured article, was entitled to free entry as a crude mineral not increased in value or condition by manufacture.    Following such holding, the Treasury Department directed the collector at Detroit to continue to return crushed stone as an unenumerated manufactured article.    October 2, 1894, the board held that a like importation made at Detroit which had been assessed pursuant to the department's instructions was entitled to free entry.    These decisions do not affirmatively show that the merchandise was in any way advanced in value or condition by a process of manufacture.

The following decisions of the Board of General Appraisers are also referred to:

February 4, 1904, the importation was at New York, appeared to be crushed or pulverized limestone and was shown to be "Caen" stone, which is a building stone obtained near Caen, Normandy.    It had not been ground or pulverized or subjected to other like process. It was ground here, then mixed with other stone and used for making imitation stonework.    It was assessed for duty as an unenumerated manufactured article and was held to be entitled to free entry under paragraph 614 of the act of 1897.

December 15, 1904, granito, which appears to be like the importation in the case at bar, was assessed as building stone and held entitled to free entry under paragraph 614.    The importation appears to have been made at Baltimore and is the first case called to our attention in which the word "granito" is used to describe the article imported.

July 5, 1905, in one case "Caen" stone like that hereinbefore mentioned and in the other granito apparently like the importation in

the case at bar were held entitled to free entry under paragraph 614. Both importations were made at New York.

March 15, 1906, granito imported at New York was again held free under paragraph 614.

August 18, 1906, crushed stone imported at Port Huron and assessed as building or lime stone was held free under paragraph 614.

December 29, 1906, an importation of crushed marble at Chicago was held properly classified for duty as an unenumerated manufactured article under section 6 of the act of 1897.

June 26, 1907, an importation of granito or terrazzo made at Cincinnati and assessed as waste under paragraph 463 of the act of 1897 was held entitled to free entry under paragraph 614. General Appraiser Howell, however, while concurring with the board because of what he considered the controlling force of its prior decisions, nevertheless in a very clear manner stated his reason and authority for disagreeing with the principle of the decision. This case was taken on appeal by the Government to the Circuit Court for the Southern District of Ohio, United States *v.* Graser-Rothe (164 Fed. Rep., 205). The court held, quoting with approval the opinion of General Appraiser Howell, that—

The merchandise as imported has been converted from a comparatively valueless article into a commodity of use and value by a process of manufacture specially designed for the purpose. Labor and machinery have been used in producing it, and because of a manufacturing process it has acquired a new name and a new use. It is therefore no longer a crude mineral but a manufactured article—

and held the same dutiable accordingly. The merchandise in that case appears to have been identical with that in the case before this court.

It is suggested by the appellants here that in the last-cited case there was no appearance for the importers. It is not claimed, however, that the *facts* would have differently appeared had the importers been represented by counsel.

In addition to the cases above cited, it appears from the evidence in this case that these appellants from the time they began importing granito or terrazzo, about 1898, had been allowed to enter the same free of duty until some time in 1904; that then for about 13 months it was assessed for duty, which was paid under protest, some or all of which was later refunded on appeal; that then for 13 months they were again permitted free entry, but that since the last part of 1906 it has been assessed for duty as an unenumerated manufactured article under section 6.

Can it be said from the foregoing that there has been such a long-continued and uniform construction of the statutes in question on the part of the Treasury Department in allowing free entry to granito or terrazzo that we should follow the same in this case?

It is apparent from a brief survey of the situation, so far as appears in this case, that prior to the passage of the act of 1897 there were few importations of an article similar to that involved here and that none of them were known by the name of granito. It does not clearly appear to what process the same had been subjected and does not appear that the importations as a result of such process had been advanced in value or condition. We think it can hardly be said that at the time the law of 1897 was enacted there had been such a long, uniform, and well-settled construction of this statute by the Treasury Department that Congress can be presumed to have intended thereby to declare that merchandise like that in this case should be admitted free of duty. In fact, so far as anything appears in this case, it can not be presumed that Congress knew that granito was being imported.

Relating to importations made under the act of 1897, it appears that merchandise like that at bar has been assessed for duty under different sections of the act of 1897 at ports other than New York. That in 1906, at Chicago, crushed marble, the preparation and use of which does not appear, was held by the board to be properly classified as an unenumerated manufactured article. That the first and only time any tribunal other than the Board of General Appraisers has been asked to pass upon the question before us, the contention that the Government here makes was sustained.

So far as paragraph 614 of the act of 1897 is concerned, we do not think there has been such a long-continued and uniform construction thereof by the Treasury Department as can be successfully invoked here.

It does not appear that the department took any affirmative action to obtain a construction of this act until 1907, when in the case of United States v. Graser-Rothe it litigated the question and as a result the court construed the statute in harmony with the Government's present claim, and since the last part of 1906 like importations have uniformly been held dutiable under section 6.

Any presumption in favor of the construction contended for by the appellants that may arise from the fact that appellants were permitted free entry of their importations, as already appears, or from the fact that the department did not appeal from any of the decisions of the board holding like merchandise entitled to free entry, we think is amply rebutted by the position the department has taken since 1906.

We hold the merchandise in question is an article manufactured in whole or in part, not otherwise provided for in the act of July 24, 1897, and dutiable at 20 per cent ad valorem under the provisions of section 6 of that act.

The decision of the Board of General Appraisers is *affirmed*.