## DOWNING & CO. v. UNITED STATES (No. 594).[1]

PULP IN SHEETS MADE FROM COTTON OR LINEN RAGS.

> Previous to the present enactment the board had in several opinions construed "manufactures of cotton," and there is a strong presumption that that construction was adopted in the law as it is. Pulp made of cotton rags or linen rags by processes that do not destroy the integrity or strength of the fibers has undergone no such chemical change as would make these goods dutiable by similitude; the pulp was rightly held dutiable, according to the material, as a manufacture of cotton under paragraph 332, or as a manufacture of flax under paragraph 358, tariff act of 1909.

United States Court of Customs Appeals, December 6, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7156 (T. D. 31235).

[Affirmed.]

*Brown & Gerry* for appellants.

*Wm. K. Payne*, Deputy Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importation in this case consists of sheets of pulp made from cotton rags and linen rags. The process of manufacture is described as follows: The rags, after being sorted, are cleaned and cut; then they go into boilers and subsequently into beaters to be beaten up into a soft fiber; next they are bleached, and finally sent to a drying machine and put into sheets or rolls. This rag pulp as imported is intended to be made into paper of a high quality.

The Board of General Appraisers found that in paper making from pulp the object sought is to draw out of the rags the fibers in a very fine state while preserving their strength as far as possible; that it is

the "tissue" resulting from the deposition of the fibers on wire cloth while suspended in water that we know as, and term, paper; that the strength and integrity of the fibers determine the quality of the paper; that the rags are broken and pulped, but that neither the mechanical nor the chemical treatment thereof breaks or destroys the fiber itself.

The importation in this case was assessed for duty at 30 per cent. ad valorem under the provisions of paragraph 415 of the tariff act of August 5, 1909, as paper not specially provided for. It was held by the Board of General Appraisers to be dutiable at 45 per cent ad valorem as manufactures of cotton or as manufactures of flax, it being immaterial as to whether the component material of chief value was flax or cotton, as if in chief value of cotton, it would be dutiable under paragraph 332, and if in chief value of flax, under paragraph 338, at the same rate, namely, 45 per cent ad valorem.

The claim made by the importer is that the importation is dutiable by similitude to wood pulp under paragraph 406 by authority of the similitude clause in paragraph 481. Paragraph 406 provides for mechanically ground wood pulp and chemical wood pulp. It is conceded that this should be given the higher rate of duty, namely, one-fourth of a cent per pound imposed on chemically ground wood pulp bleached. The question, therefore, is whether the importation is provided for in the tariff act by either paragraph 352 or paragraph 358, dependent upon which material (cotton or flax) is of chief value, or whether it is to be treated as a nonenumerated manufactured article and therefore dutiable by similitude to wood pulp.

While the dutiability of this material as cotton or flax has never been determined by the courts other than by the Board of General Appraisers, it has had consideration in three cases by the board. In the matter of the protest of J. W. Hampton, jr., & Co., G. A. 1866 (T. D. 13594), the subject of the protest was bleached cotton pulp, dried in sheets or cakes, to be used for filtering purposes. It was returned by the appraiser as a manufacture of cotton, and assessed for duty at 40 per cent ad valorem under paragraph 355 of the act of 1890. It was claimed to be dutiable as manufactures of wood or other pulp. It was found that the article in question was itself cotton pulp and not an article manufactured from or of cotton pulp, and being a manufacture of cotton, it was held to be properly assessed for duty by the collector.

In the matter of the protest of Hugo Reisinger, G. A. 2414 (T. D. 14692), certain pulp was assessed for duty at 40 per cent ad valorem as a manufacture of cotton under paragraph 355 of the tariff act of 1890. It was claimed to be free, as paper stock, crude; or, if dutiable, at 20 per cent under section 4 as a nonenumerated manufactured article; or at 25 per cent, as a manufacture of paper under paragraph 425; or at 35 per cent, as a manufacture wholly or chiefly of wood

under paragraph 461. The board found the merchandise to be composed of cotton, flax, and wood, cotton the component material of chief value, and that it was not crude paper stock; and found that cotton, being the component material of chief value therein, the same was dutiable as a manufacture of cotton under paragraph 355.

With this construction of the term "manufactures of cotton" before it, Congress enacted the present statute, and a strong presumption arises that the term is used in the present act in the sense in which it had been interpreted by the board.

It is claimed, however, that in principle the question had been otherwise decided by the courts, and the case of Meyer *v.* Arthur (91 U. S., 570) is relied upon as a leading case upon the subject. In that case the question presented was whether white lead, nitrate of lead, oxide of zinc, and dry orange mineral are manufactures of metal within the meaning of the act of August 1, 1872, levying duties upon the manufactures of metals, or of which the metals, or either of them, is the component material of chief value. In that case the products in question were the products of metals which had undergone a chemical change and which had become something else than metals. Their characteristics as metal had disappeared. The metal had completely lost its identity and become a different mineral species.

In the present case the paragraph imposing a duty upon the manufactures of flax, hemp, ramie, or other vegetable fiber clearly indicates that the preservation of the fiber is sufficient to bring the article within the general term, "flax, hemp, or ramie." We think the same thing can be said of cotton, under paragraph 332, that it is the cotton fiber which is the crude cotton meant by the paragraph. In the present case, as the finding of facts indicates, the fibers of the cotton are retained. It is true they are cut somewhat; but the strength and integrity of the fibers determine the quality of the paper. It can not be said that they have disappeared or undergone a complete chemical change, as was the case in Meyer *v.* Arthur.

The case T. D. 27866 is cited as sustaining the contention of the importers. In that case the question was whether sawdust was a crude article used in dyeing within the meaning of the tariff act. The assessment was for waste not specially provided for. No question appears to have been raised as to whether sawdust was a manufacture of wood, and the case therefore is not in point. On the other hand, ground particles of wood, or wood flour, produced intentionally by the grinding operation, have been held to be dutiable as a manufacture of wood. Goldman *v.* United States (87 Fed. Rep., 193); Nairn Linoleum Co. *v.* United States (151 Fed. Rep., 955).

The importers also cite the case, G. A. 1128 (T. D. 12356). The question there was whether a pulp produced from straw and reduced to fibers by beating or cutting with knives was dutiable as a manufacture of straw. It was held that the pulp, presenting none of the dis-

tinguishable characteristics of straw, was not to be classified as a manufacture of straw, and was dutiable by similitude to chemical wood pulp bleached.

The case is distinguishable from the present in that the fibers of the straw were not of crude material within the intent of the tariff act, while the fiber of cotton and of flax is the crude material, within the meaning of paragraph 332 and paragraph 358, respectively; and, as the board in the present case finds that the fibers are still retained to the extent at least that they perform an important office in the use of the article produced and imported, we are unable to say that they have lost their identity, as was the case of the article involved in T. D. 12356.

A further contention is made by counsel for the importer, which is that Congress having distinguished in prior acts between cotton and flax and pulp as components, merchandise like that at bar, which is in the form of pulp, can not be considered as a manufacture of cotton or flax, and attention is drawn to the fact that in paragraph 461 of the tariff act of 1890, paragraph 353 of the tariff act of 1894, and paragraph 433 of the tariff act of 1897 are found provisions for manufactures of wood or other pulp, and in paragraph 447 of the tariff act of 1909 provision is made for the manufactures of pulp generally. It is said that articles made out of the merchandise, the subject of the importation in this case, such as statuettes or trays, would be dutiable under this provision, although the material itself is not, and that these provisions for manufactures of pulp, when considered in connection with coexistent provisions for manufactures of cotton or flax which are found in the various tariff acts, indicate very clearly that, to the mind of Congress, pulp is a substance distinct from cotton or flax.

We do not see how this conclusion should follow from the premises. The fact that articles made from pulp might be dutiable at a different rate is no more significant than that articles made from cotton cloth might be dutiable at a different rate than is imposed upon the manufactures of cotton had Congress seen fit to provide *eo nomine* for such articles made up from cotton cloth.

The cases cited to support the contention of counsel do not support the view contended for. The cases are Blumenthal *v.* United States (144 Fed. Rep., 384) and Seeberger *v.* Cahn (137 U. S., 95). In one of these cases the court was dealing with contrasting provisions in the same act, and it was held that in the acts in question in the one case Congress had erected a distinction between glass and paste and in the other between worsted and wool. In the present case the sole question is whether the product here in question is a manufacture of cotton or flax, and the fact that a provision is made for articles which might be made out of such manufactures of cotton, naming it as pulp, does not aid in determining whether the article in question, while it remains pulp, is in fact a manufacture of cotton or flax.

We think no error was committed by the board in determining the importation in question to be dutiable as manufactures of cotton or flax, and the decision of the board is therefore *affirmed*.

DE VRIES, Judge, did not sit in this case.