LANG et al. v. UNITED STATES (No. 1182).[1]

WOOD FLOUR A MANUFACTURE OF WOOD.
   In the light of the decisions it is held that the provision in the tariff act of 1909 covering the merchandise here was reenacted, and that by this reenactment the Congress adopted the construction which had been placed upon the terms there employed by the courts, and that, accordingly, wood flour was dutiable as a manufacture of wood.—Rossman v. United States (1 Ct. Cust. Appls., 280; T. D. 31321); Salomon v. United States (2 Ct. Cust. Appls., 92; T. D. 31635) distinguished.

United States Court of Customs Appeals, November 11, 1913.

APPEAL from Board of United States General Appraisers, Abstract 31921 (T. D. 33338).
   [Affirmed.]

Comstock & Washburn (J. Stuart Tompkins of counsel) for appellants.
   William L. Wemple, Assistant Attorney General (Charles D. Lawrence, assistant attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:
   The question here presented is whether certain wood flour, so called, is dutiable, as assessed and as held by the Board of General Appraisers, at 35 per cent ad valorem under paragraph 215 of the act of 1909 as manufactures of wood, or whether it is dutiable at 20 per cent ad valorem under paragraph 480 as a nonenumerated article, or directly or by similitude at 20 per cent ad valorem under paragraph 203 as wood, unmanufactured, not specially provided for.

The board found that the wood flour was produced by pulverizing or grinding up wood and thereafter screening it to different degrees of fineness. The paragraph under which the importation was held dutiable is 215, reading as follows:

   215. House or cabinet furniture wholly or in chief value of wood, wholly or partly finished, and manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for in this section, thirty-five per centum ad valorem.

The contention of the importers is that under the doctrine of *ejusdem generis* this merchandise should not be held to fall within paragraph 215. The case of United States v. Dudley (174 U. S., 670) is cited in support of this contention. That case presented the question

---

as to whether spruce boards and planks, planed on one side, tongued and grooved, of varying dimensions, were entitled to free entry as " sawed boards, planks, deals, and other lumber, rough or dressed," or were dutiable as " manufactures of wood." In the course of the opinion the court said:

> We also think that some light upon the proper construction of the words " manufacture of wood " in paragraph 181 is afforded by the fact that it is used in connection with " house or cabinet furniture of wood wholly or partly finished," and is followed by the words " or of which wood is the component material of chief value." This would indicate an article " made up " of wood analogous to furniture or other article in which wood is used alone or in connection with some other material.

Reliance is also placed by the importers upon the decision of this court in Downing *v.* United States. (2 Ct. Cust. Appls., 364; T. D. 32093.) In that case it was held that pulp made of cotton rags or linen rags by a process which did not destroy the strength or integrity of the fibers should be classified as assessed by the collector as a manufacture of cotton under paragraph 332, or as a manufacture of flax under paragraph 358 of the tariff act of 1909. In the court's opinion, distinguishing the case of Meyer *v.* Arthur (91 U. S., 570), it was pointed out that in that case the subjects under consideration, being white lead, nitrate of lead, oxide of zinc, and dry or orange mineral were held not to be manufactures of metal within the meaning of the act of 1872, for the reason that such metals had undergone a chemical change and had become something else than metals. Their characteristics as metal had disappeared. The metal had completely lost its identity.

The opinion also distinguished the case G. A. 1128 (T. D. 12356), which dealt with the subject of pulp produced from straw and reduced to fibers by beating or cutting with knives, in which case it was held that such material was not a manufacture of straw. It was said:

> The case is distinguishable from the present in that the fibers of the straw were not of crude material within the intent of the tariff act, while the fiber of cotton and of flax is the crude material within the meaning of paragraph 332 and paragraph 358, respectively; and as the board in the present case finds that the fibers are still retained to the extent at least that they perform an important office in the use of the article produced and imported, we are unable to say that they have lost their identity, as was the case of the article involved in T. D. 12356.

The distinction which we drew between the case under consideration and the case G. A. 1128 did not necessarily involve an affirmance of the correctness of the holding in the latter case. Nor was that case fully epitomized in the distinction. It appears by reference to the case that there is a statement that the substance there involved was a new substance made by a chemical process.

Counsel for importer also cites the cases of Rossman *v.* United States (1 Ct. Cust. Appls., 280; T. D. 31321); Salomon *v.* United States (2 Ct. Cust. Appls., 92; T. D. 31635); United States *v.* Embossing Co. (3 Ct. Cust. Appls., 220; T. D. 32536); and Bartley Bros. & Hall *v.* United States (3 Ct. Cust. Appls., 363; T. D. 32961) in support of his contention.

In the Rossman case it was held that the material called granito, produced by crushing marble waste, practically worthless, but when crushed and screened of considerable value, was a nonenumerated manufactured article. The case is in no sense controlling here, as the question of whether it was a manufacture of marble was not considered, and if it had been, it might well have been answered by the fact that the manufacture was not of crude marble but of a worthless waste.

The Salomon case is also distinguishable. The subject there considered was ground talc. It was held not to be chalk, as chalk proper is a soft carbonate of lime, and while, by extension of the words of the statute, which included chalk prepared in the form of tubes, blocks, sticks, and disks, including tailor's, billiard, red, and French chalk, talc had in earlier cases been shown to be commercially known as French chalk when appearing in the form of cubes, blocks, or sticks, yet ground chalk had not been extended to include ground talc; and that as to the claim that the article was dutiable under paragraph 95 as an article or ware composed wholly or in chief value of earthy or mineral substances, predicated upon the peculiar language of that paragraph, it was held in effect that Congress had distinguished between the mineral substance itself and articles made up of (composed of) mineral substances, a provision differing materially from one for "manufactures of wood or bark." This very distinction is pointed out in United States *v.* Embossing Co., *supra*, and again in Bartley Bros. & Hall, *supra*.

Another case distinguishing the same case of Meyer *v.* Arthur is that of Murphy *v.* Arnson (96 U. S., 131). In that case it was held that nitrobenzol, which was produced by mixing benzol and nitric acid, was a manufacture from benzol and nitric acid and dutiable as an article manufactured from two or more materials at the highest rate imposed upon either material; that it was to be distinguished from Meyer *v.* Arthur in the fact that in the latter case the substance there under consideration had undergone a chemical change. The court significantly said:

The various nostrums vended all over the land, with or without the certificate of the Patent Office, are manufactures. Beer may well be said to be manufactured from malt and other ingredients, whisky from corn, or cider from apples. The fact that the identity of the original article or articles is lost and that a new form or a new character is assumed is not material in determining whether within the popular idea, as embodied in the customs act, the article in question is a manufacture from its original elements.

But we need not rest our conclusions in this case upon general authority, as the specific question here involved has been under consideration by the courts. We find that under the tariff act of 1894 it was held, in Goldman *v.* United States (87 Fed., 193), that wood flour should be classified as a manufacture of wood, and in Nairn Linoleum Co. *v.* United States (151 Fed., 955) it was held by the Circuit Court for the Southern District of New York, under the act of 1897, following the Goldman case, that wood flour was dutiable as a manufacture of wood. In that case the doctrine of *ejusdem generis* was invoked by the importer, but, notwithstanding this contention, the holding was as above stated. In the light of these decisions Congress reenacted the provision in substantially identical terms in 1909, and, it must be assumed, adopted the construction which had been placed upon the terms employed by the courts.

The further contention is made that if the material has not lost its identity as wood, then the merchandise is dutiable as wood unmanufactured rather than manufactures of wood. But the same argument of legislative adoption which rules the other question necessarily determines this one also.

The decision of the Board of General Appraisers is *affirmed.*