NORTH COAST IMPORTING CO. ET AL. *v.* UNITED STATES (No. 3976)[1]

United States Court of Customs and Patent Appeals, November 2, 1936

*Lawrence & Tuttle* (*Charles F. Lawrence* of counsel) for appellants.

*Joseph R. Jackson*, Assistant Attorney General (*William Whynman*, special attorney, of counsel), for the United States.

[1] T. D. 48644.

[Oral argument October 8, 1936, by Mr. Frank L. Lawrence and Mr. Whynman]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal by several importers from two judgments of the United States Customs Court, the first of which overruled certain protests filed with the Collector of Customs at the port of Seattle, insofar as they affected the merchandise here involved, and the second of which judgments overruled protests respecting the same kind of merchandise filed with the Collector of Customs at the port of San Francisco. The cases were consolidated for the purposes of appeal.

The involved merchandise bears the trade names of "ajinomoto" and "ve-tsin," the first being of Japanese, and the second of Chinese, manufacture. The merchandise was classified by the collectors at the ports of Seattle and San Francisco as "chemical * * * compounds * * * and mixtures," and assessed with duty at the rate of 25 per centum ad valorem under the provisions of paragraph 5 of the Tariff Act of 1930. Appellants claimed in their protests that the merchandise was dutiable as unenumerated manufactures under paragraph 1558 of the same act at a rate of 20 per centum ad valorem.

The Customs Court held, one judge dissenting, that the involved merchandise was dutiable under paragraph 5, and hence that the protests, insofar as they involved such merchandise, should be overruled. Judgments were entered accordingly, and from such judgments this appeal was taken.

The competing paragraphs of the tariff act here involved read as follows:

PAR. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Upon the trial the records in two previous cases were, by stipulation, incorporated as a part of the record herein.

It was established by the testimony introduced before the trial court that the merchandise involved is, from a scientific standpoint, a chemical compound or chemical mixture, and is used chiefly as a flavoring for food. A negligible amount is used for experimental purposes in research laboratories.

184

It is conceded that the chemical analysis of ajinomoto is as follows:

| | |
|---|---|
| Monosodium glutamate | 93. 60% |
| Sodium chloride (common table salt) | . 90 |
| Moisture | 5. 50 |
| | 100. 00% |

It is further conceded that the chemical analysis of ve-tsin is as follows:

| | |
|---|---|
| Monosodium glutamate | 80. 60% |
| Sodium chloride | 14. 48 |
| Moisture | 4. 92 |
| | 100. 00% |

It was stipulated upon the trial that ve-tsin is substantially similar for all purposes in material, character, and use, to ajinomoto, and it was further stipulated that ajinomoto is produced by a chemical process covered by certain patents, which were introduced in evidence.

It will be observed that the chief difference between the two products is in the amount of sodium chloride, or common table salt, the ajinomoto containing .90 per centum and the ve-tsin containing 14.48 per centum. With respect to this difference, the parties on the trial stipulated that "the difference in salt content in both analyses is, for the purposes of this case, immaterial."

It is conceded by appellants that monosodium glutamate, the principal ingredient of both ajinomoto and ve-tsin, is a chemical compound, but they insist that the added substances of sodium chloride and moisture constitute a mixture of a chemical compound with other substances which are not chemical compounds, and that therefore the involved merchandise is not either a chemical compound or a chemical mixture.

As we view the stipulation with respect to the salt content of the merchandise, which we accept as a stipulation of fact for the purposes of this case, it is to the effect that the amount of salt contained therein, in excess of nine-tenths of one per centum, is immaterial in determining whether or not ajinomoto and ve-tsin are chemical compounds or chemical mixtures.

In view of the testimony in the case and the stipulations hereinbefore referred to, we have no hesitation in holding that the involved merchandise is either a chemical compound or chemical mixture from a purely scientific standpoint.

The main contention of appellants is that, even though the merchandise be a chemical compound or chemical mixture from a purely technical and scientific standpoint, such a compound was not within the purview of Congress in the enactment of said paragraph 5. This contention is based upon the proposition that, in common understanding, a chemical compound is a substance used in a technical

manner for chemical purposes, and that articles of food are not included in such a concept. In support of this contention, appellants call attention to many substances which are, from a scientific standpoint, chemical compounds, such as water, soda water, table salt, sugar, etc., but which appellants contend clearly would not come within the scope of chemical compounds as Congress used those words in paragraph 5.

There is much force in appellants' contention, but in the case of *Merck & Co. (Inc.)* v. *United States*, 19 C. C. P. A. (Customs) 16, T. D. 44852, we held that sugar of milk was properly classifiable as a chemical compound under the provisions of paragraph 5 of the Tariff Act of 1922, which paragraph is the predecessor of paragraph 5 of the Tariff Act of 1930. In our opinion we said:

> On the other hand, sugar of milk is shown by the testimony to be a very considerable subject of commerce and is produced and marketed in very large quantities in the United States. Many thousands of pounds of it are used in manufactured food specialities, particularly infant food. Witness Wall testified, on the hearing below, that during the year previous to his testimony his firm had sold 12,000 pounds of this substance. * * *

It is true that in that case there was no contest upon the question of whether sugar of milk is a chemical compound. The appellant there claimed that it was such, while the Government contended that, admitting it was such a compound, it was more specifically provided for in paragraph 504 of the Tariff Act of 1922 as a saccharide. However, in the opinion the court quoted at length from the Summary of Tariff Information, 1921, prepared for the use of the Senate Committee on Finance in the consideration of H. R. 7456, which became the Tariff Act of 1922. Included in the quotation is the following:

> * * * Lactose or milk sugar was specifically provided for on the free list in the act of 1913 (par. 547), but was omitted from the present bill *with the intention of throwing it into the basket clause in paragraph 5*, dutiable at 25 per cent. In the absence of this provision in paragraph 505, malt sugar would probably also be dutiable under paragraph 5 at 25 per cent. * * * [Italics supplied.]

Following the quotation from which the foregoing is an excerpt, we in our opinion in said case specially noted the language above quoted and said:

> * * * The Tariff Commission had directed the attention of the Congress to the fact that it was not desirable to include sugar of milk within the classification of the rare substances collected and named in said paragraph 504 and that it was the intent of the House of Representatives, in omitting the specific enumeration of sugar of milk from H. R. 7456, to relegate it to classification under paragraph 5 of said act, where it would bear the rate of duty imposed by said paragraph, namely, 25 per centum ad valorem. This, considering the food properties of said article and the cheapness of its production, would make a rate of duty reasonably commensurate therewith.
>
> * * * * * * *
>
> It seems to be quite evident, from a consideration of this whole matter, that the Senate Committee on Finance was satisfied with the suggestions of the Tariff

Commission and with the action of the House of Representatives in relegating sugar of milk to classification under said paragraph 5. * * *

We would observe that paragraph 5 of the Tariff Act of 1930, herein involved, is identical with paragraph 5 of the Tariff Act of 1922, construed by us in the case last above cited.

It thus appears that Congress did not intend to limit the provisions of paragraph 5 of the Tariff Act of 1922 to chemical compounds and chemical mixtures other than those which were used for food purposes. We see no more reason for excluding the merchandise here involved, used as a condiment, from paragraph 5 of the Tariff Act of 1930, than for excluding therefrom sugar of milk, used in infant foods.

The rule is that words to which Congress has given a special meaning in a tariff act will be presumed to retain that signification in a subsequent tariff act relating to the same subject matter, in the absence of anything showing a contrary intention. *De Jonghe et al.* v. *United States*, 5 Ct. Cust. Appls. 134, T. D. 34189.

We have many times said that, where doubt exists as to the meaning of a tariff term, the master rule of construction is so to interpret the term as to carry out the legislative will. This rule is so familiar as to require no citation of authority.

Appellants, however, contend that by legislative adoption of judicial decision, and by long continued administrative practice, the involved merchandise should be classified under paragraph 1558.

With respect to the first proposition, we do not find that, prior to the enactment of the Tariff Act of 1930, it had been judicially held that merchandise of the character here involved was not a chemical compound or chemical mixture within the meaning of those words as used in the tariff acts of 1930 and 1922, or their predecessors. It is well established that the rule of legislative ratification of judicial decision extends only to the precise points judicially determined. *Cunard Steamship Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 615, T. D. 47605.

With respect to long-continued administrative practice, while it would seem that for many years merchandise of the character here involved had been classified as a nonenumerated manufactured article, it is also true that Congress, in the enactment of the Tariff Act of 1922, as hereinbefore pointed out, evidenced its intention that chemical compounds and mixtures used for food purposes should be included in paragraph 5 unless more specifically provided for.

On May 20, 1930, the Commissioner of Customs sent a letter, with the approval of the Secretary of the Treasury, to the Collector of Customs, New York, advising him that the commodity ajinomoto was properly dutiable under paragraph 5 of the Tariff Act of 1922, but authorizing him to continue to classify the commodity under paragraph

1459 of such act upon all merchandise entered or withdrawn from customs custody within thirty days after said letter appeared in the weekly TREASURY DECISIONS, and thereafter to assess duty thereon under paragraph 5 of the tariff act. This letter was published as T. D. 44047 on June 5, 1930.

The Tariff Act of 1930 was enacted on June 17, 1930, and therefore it appears that Congress, before its enactment, presumptively had knowledge that the Treasury Department was of the opinion that merchandise of the character here involved should be classified under paragraph 5 of the Tariff Act of 1922.

In view of this fact we do not think that it may be said that Congress, in enacting paragraph 5 of the Tariff Act of 1930, intended to recognize and affirm the administrative practice, which apparently had prevailed for many years, in classifying merchandise such as is here involved as a nonenumerated manufacture.

Furthermore, the rule of long-continued administrative practice is only a rule of construction to aid the courts in arriving at the intent of Congress, and it is never absolutely controlling if a legislative intent contrary to such practice appears. *Rossman* v. *United States*, 1 Ct. Cust. Appls. 280, T. D. 31321.

In the case of *Markell et al.* v. *United States*, 16 Ct. Cust. Appls. 518, T. D. 43239, this court said:

* * * As has been frequently stated, the master rule of construction is for the court to arrive at the legislative intent. In order that this may be done, numerous rules and doctrines have been adopted and have become the instruments with which the courts labor in the task of construction. Ofttimes these rules and doctrines, when applied, have opposite effects. Then, the applicability and controlling effect or weight of same must be determined. The intention of the legislature, as indicated by the applicability of a rule of construction, must yield if the contrary intent is otherwise ascertained. [Citing cases.]

As it is our opinion, for the reasons hereinbefore stated, that Congress did not intend to limit the provisions of paragraph 5 of the Tariff Act of 1930 to chemical compounds and chemical mixtures other than those which were used for food purposes, the rule of long-continued administrative practice may not be relied upon for classification of the involved merchandise under paragraph 1558.

In view of the fact that involved merchandise consists of chemical compounds or chemical mixtures, technically speaking, and in view of the further fact that Congress did not intend to limit the provisions of paragraph 5 of the Tariff Act of 1930 to chemical compounds and chemical mixtures other than those which were used for food purposes, we find no error in the judgments appealed from.

For the reasons stated, the judgments of the United States Customs Court are *affirmed*.

GARRETT, Judge, concurs in the conclusion.