(C. D. 484)

GEO. S. BUSH & CO., INC. v. UNITED STATES

United States Customs Court, First Division

(Decided May 2, 1941)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel G. McGrath* and *Richard F. Weeks*, special attorneys), for the defendant.

Before BROWN and WALKER, Judges

WALKER, Judge: Plaintiff imported 400 bags of kelp meal at Seattle, Wash., June 3, 1935. The collecter of customs at that port assessed duty on the merchandise at the rate of 10 per centum ad valorem under the provision in paragraph 1540 of the Tariff Act of 1930 for "seaweeds, if manufactured." Plaintiff filed, in proper time, and form, a protest claiming free entry under the provision in paragraph 1705 of the same act for "kelp."

The statutes involved:

PAR. 1705 [of the Free List] Kelp.

PAR. 1540. Moss and sea grass, eelgrass, and seaweeds, if manufactured or dyed, 10 per centum ad valorem.

That we may have a basis for a proper understanding and discussion of the issue the following authoritative definitions of the word "kelp" are quoted:

Webster's New International Dictionary, 2nd ed.:

1. The ashes of seaweed, formerly a source of soda, now used chiefly as a source of iodine.

2. A mass or growth of large seaweeds esp. those burned for the ashes.

3. Any of various large brown seaweeds of the families *Laminariaceae* and *Fucaceae.*

Funk & Wagnalls New Standard Dictionary:

1. Seaweeds burned for the chemical salts contained in their ash; any large, coarse seaweeds, as the *Laminaricaeae* of the *Fucaceae.*

Under paragraph 1705 by an *eo nomine* designation "kelp," without qualification or limitation, is duty free. The question before us is, therefore, must kelp meal, the imported merchandise in issue, be classified under paragraph 1705, or does it fall within the provisions of paragraph 1540 as seaweed manufactured?

In the opinion of the majority of the Court of Customs and Patent Appeals in the case of *Nootka Packing Co.* v. *United States,* 22 C. C. P. A. 464, T. D. 47464, decided January 7, 1935, may be found a resume of all of the cases which up to that time had any apparent bearing upon the issue here involved, and we feel it is the leading case upon which the law herein should be determined. On page 470 of the volume cited we note the following language:

The clear weight of the authorities on the subject is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article.

The aforementioned language to our minds contains the gravamen of the issue. Having in mind the quoted language of the appellate court, can it successfully be maintained in reason and logic that the preponderance of the evidence, or any evidence in this case, unless we take isolated answers of witnesses, establish that kelp and kelp meal are one and the same commodity? We honestly feel not, no more than would we agree that wheat and flour are identical.

Let us take the testimony of plaintiff's (the importer's) witnesses. Dr. George B. Rigg, a professor of botany at the University of Washington and a member of the staff in oceanography, testified, among other things, that his duties consisted of the collection and identification of seaweeds along the Washington coast, through the Shumagin Islands, in Alaska (R. 6). Shown samples of the merchandise in issue the witness said: "They are kelp, and it is ground-up kelp." (R. 7.) He was asked if he was able to so determine that fact by the examination made in court, and he answered: "May I put it this way, that I feel certain that it is. I would feel certain from my own procedure that it is kelp. However, if I wanted, if I were to testify under oath that it is really, that I am absolutely sure

of that, I would want to make a microscopic examination of it." (R. 8.)

Further, on page 9 of the record, the witness said on cross-examination: "Kelp does come from the sea, yes, and that with kelp, with a lot of other things, are commonly referred to as seaweeds," and "Yes, kelp is one of the kinds of seaweeds, I would say."

On page 11 of the record the witness was asked whether he could determine whether a material handed to him was or was not ground kelp, and he replied:

Now I would want to take this sample to the laboratory and proceed as I did with that one, that is, I would want to soak this up and see how it behaves in soaking up and making a more thorough examination before I would offer an opinion on it.

Further on, in his cross-examination by defendant's counsel, the witness was handed certain material similar in appearance to the imported merchandise, and, questioned as to what it was, replied:

Well, you see I hesitate to say positively about that, about any of this, until I have made the microscopic test.  (R. 16.)

In short the answers of the witness show conclusively that he could not identify as kelp either the imported merchandise or samples of material similar in appearance to it with any degree of certainty by a mere physical examination, but that a laboratory and microscopic examination would be necessary.

The method of harvesting the original kelp and processing it into kelp meal was described by the next witness, Charles W. Walworth, as follows:

It is harvested on what we call a kelp harvester, and it is a sort of reaper that cuts the kelp about 4 to 5 feet beneath the surface of the water.  It is taken in on these barges and taken into the mill and run through hammer mills and ground up and taken from there to retards, and dried by a drying process; I think they call it a retard; and after it is ground it is put through another series of mills and ground fine, and from there it is sacked and put out for commercial use, that is, for feeds.  (R. 35)

Allan J. Elwell, United States Examiner at the port of Seattle, was called as a witness by the defendant and later made a witness for the plaintiff.  Mr. Elwell's testimony added nothing to the proof, being in substance that he was unable to say whether the merchandise in issue was ground-up kelp or some other kind of seaweed in ground-up form.

After a painstaking and careful consideration of all of the testimony before us it seems to the court that the compelling conclusion is that the imported merchandise is not kelp since it has completely lost its identity as such by reason of the processing to which it was subjected and has become not kelp but meal, or a seaweed meal.

Plaintiff in the brief filed in its behalf relies on the *Nootka Packing Co.* case, hereinbefore cited and quoted from. In that case clam meat, washed, and cut into small pieces which could be readily identified as parts of clams, canned in brine, and cooked was held to be properly classifiable under the tariff provision for "clams, packed in air-tight containers" rather than under the provision for "shellfish * * * prepared or preserved." In arriving at its conclusion the court pointed out that the clams involved were adaptable to exactly the same uses as would be whole clams and that the product could be readily identified as parts of clams. These facts distinguish the *Nootka Packing Co.* case from the present case, since, first, the meal in issue is a new product distinguished from kelp in form and use, and, second, the evidence shows that it is not readily identifiable as kelp, a laboratory or microscopic examination being necessary to determine its identity.

The same is true of the case of *Berner* v. *United States*, T. D. 17579, cited by plaintiff, wherein the merchandise was roasted ground coffee—there was no loss of identity and the use of the coffee for human consumption remained unchanged. So also in the case of the powdered charcoal involved in *Asai* v. *United States*, Abstract 27172, cited by the plaintiff. No new product had been made therefrom and it was doubtless readily identifiable as charcoal, and hence was properly held to be classifiable under the *eo nomine* provision for "wood charcoal."

With the cases of *Lang et al.* v. *United States*, 4 Ct. Cust. Appls. 464, T. D. 33881, and *Downing* v. *United States*, 2 id. 364, T. D. 32093, also cited by the plaintiff, we are in hearty accord, but actually they have no application to the situation at bar, there being no question as to the scope of an *eo nomine* designation involved therein. The case of *John H. Faunce, Inc.* v. *United States*, T. D. 46925, also cited, involved a competition between the provision in paragraph 775 of the Tariff Act of 1930 for "soy beans, prepared or preserved in any manner," and the catch-all provision for nonenumerated manufactured articles. It will be observed that the *eo nomine* provision for soy beans there involved contains language enlarging its scope, viz, "prepared or preserved in any manner," which does not appear in the provision in paragraph 1705 for kelp.

In *Stone & Co.* v. *United States*, 7 Ct. Cust. Appls. 173, T. D. 36492, certain ground currants were classified under the provision for "currants, Zante or other" in paragraph 218 of the Tariff Act of 1913 and were claimed to be properly classifiable under the provision in paragraph 217 of the same act for "fruits, including berries, when dried, desiccated, evaporated, or prepared in any manner." The currants had been ground to a pulp for use in making wine, and the court held that they had lost their identity as currants and that the imported

product was, in fact, a material prepared or made from currants. So in the case at bar. The original kelp has lost its identity as kelp and the imported product is, in fact, a material made or manufactured from kelp, to wit, seaweed meal.

We therefore hold that it was properly classified by the collector under the provision in paragraph 1540, *supra*, for "seaweeds, if manufactured." The protest is overruled, and judgment will issue accordingly.