Verdict for defendant.

---

### FISK *et al. v.* SEEBERGER.

*(District Court, N. D. Illinois.  May 2, 1889.)*

1. CUSTOMS DUTIES—PROTEST—GROUNDS.
    Where import duties are paid under a protest made on the single ground that the goods should have been classified as material for making or ornamenting hats, bonnets, etc., and not otherwise provided for, instead of being classed as beads; it cannot be objected, to defeat the collector's classification, that the goods might more properly have been classed as jet, or imitation of jet. The protest should have been in the alternative.

2. SAME—ACTION TO RECOVER BACK—BURDEN OF PROOF.
    In an action to recover back duties paid under protest, the burden of proof is on the plaintiffs to show by a preponderance of testimony that the goods did not properly belong to the class to which they were assigned by the collector, and that they were dutiable only as claimed in the protest.

3. SAME.
    If the jury are unable to say from the testimony whether or not the goods properly belong to the class claimed by plaintiffs in their protest, defendant is entitled to a verdict.

4. SAME—CLASSIFICATION.
    Though goods are made expressly for the purpose of being used by milliners in making and ornamenting hats, bonnets, etc., yet, if they have become adapted to other uses to such an extent that the jury can say their chief and principal use is not in the making and ornamenting of hats, etc., there is a failure to show that they ought to have been classed as hat ornaments merely.

At Law.

Action by D. B. Fisk *et al.* against A. F. Seeberger, to recover back customs duties paid under protest.

*P. L. Shuman*, for plaintiffs.

*Graham H. Harris*, Asst. U. S. Atty., for defendant.

BLODGETT, J., (*charging jury.*) You are all of you in a general way familiar with the rule that the jury only find the facts in the case under the testimony. The court instructs you as to the law of the case, and such instruction is obligatory. You are to determine these questions of fact from the weight and satisfactory character of the testimony which is adduced in the case by each party. The suit is brought by the plaintiffs to recover back duties which they paid under protest, under the claim that the collector should have assessed these goods for duty under clause 448 of Heyl's Compilation of the Customs Laws, as materials for making and ornamenting hats, at a duty of 20 per cent. *ad valorem.* The plaintiffs protested against the assessment made by the collector, paid the duties under protest, and took an appeal to the secretary of the treasury, where the action of the collector was affirmed; whereupon they brought this suit, as by law they are allowed to do, in order to test the legality of the collector's action. It is a method provided by law, by which an importer can have corrected any error which the collector may make in the classification or assessment for duty of the goods which he imports. The law fixes the duty arbitrarily, under certain classifications or descriptions, and the collector, of course, is liable to make mistakes, and make an erroneous or illegal classification of goods, in which event the proper procedure for the importer is to pay the duties under protest, and then bring his suit against the collector for the excess of duties paid. As has been properly stated to you by counsel, this is not a controversy in which any feeling should be invoked. It simply presents dry questions of fact and law,—questions of fact to be determined by the jury, and the questions of law to be determined by the court. I have already taken from your consideration all the goods which are described as "lace or bead work" and "bead ornaments," because I am clearly of opinion, as a question of law, upon the evidence adduced on the part of the plaintiff, that these goods come under the clause of the law which fixes a duty on "beads or bead ornaments," and as such are specifically dutiable at 50 per cent. *ad valorem.* It is suggested on the part of the defendant that they might have been dutiable at 25 per cent., as jet, or imitations of jet. But it makes no difference whether the collector made a mistake or not in regard to classifying them as beads, rather than classifying them as jet. The only question is, did he err in not classifying them as material for making or ornamenting hats, bonnets, and hoods? The plaintiffs, if they thought it probable or possible that these goods should have been passed as jet or imitations of jet, could have made their protest in the alternative,—that is, if not dutiable as material for hats, bonnets, and hoods, then they were dutiable as jet, or jet ornaments, or imitations of jet,—and thereby save the questions by charging the collector with two mistakes, as you may say. And I will premise further that, in asserting that these goods are dutiable as material for making and ornamenting hats at 20 per cent. *ad valorem*, the plaintiffs have the bur-

den of proof. They are obliged to satisfy you by a preponderance of testimony, or by satisfactory testimony, that these goods are, and only are, material for making and ornamenting hats, bonnets, and hoods. The burden of proof,—the laboring oar, so to speak,—is with the plaintiffs. I make this observation here because one of the best and most satisfactory pieces of evidence which can be adduced here in order to enable the jury and 'the court to fully understand just the character of these goods, and possibly to have some idea as to what their use and classification should be, is the production of samples of the goods themselves; and with reference to the goods now left before you for consideration there is but one sample produced. That is the sample No. 146,289, which purports to be a sample of the goods known in the invoice as "metal laces." I will say further that if you feel yourselves unable to determine whether these goods are or are not material for making or ornamenting hats, then you would have a right to find a verdict for the defendant, for insufficiency of testimony on the part of the plaintiffs. If, when you go to your room, you are left so much in doubt of the character of these goods from the testimony which is adduced before you in the absence of samples, that you are unable to determine whether they are properly hat trimmings, and nothing but hat trimmings, in ordinary parlance, then you would be justified in finding a verdict for the defendant generally, because of the unsatisfactory nature of the testimony adduced by the plaintiffs.

I have allowed the plaintiffs to proceed and offer such testimony to you as they had at control; it being conceded that the plaintiffs have lost their samples, or are unable to produce them, and the government having none. Then the testimony on the part of the plaintiffs tends to show that all these goods described in the various invoices of August 31st, of August 25th, of September 7th, and September 15th, which are now in question before you, are materials for making or ornamenting hats, bonnets, and hoods. The testimony on the part of the plaintiffs tends to show this. You are to say whether you are satisfied from that testimony. I may say further that the mere fact that a dealer in millinery goods has imported these goods is not the controlling fact at all. The question is, what use are these goods adapted to, and what is the principal or predominating use to which they are applied? You are all of you far enough along in the experiences of life to know that a commodity may be made specially for one use, and yet be found to be equally as well adapted to many other uses. And if these goods, although made expressly for the purpose of being used by milliners in making and ornamenting hats, bonnets, and hoods, have become applicable to other uses to such an extent that you can say that the making and ornamenting of hats is not their chief and principal use, then the plaintiffs will fail in their case. But if the plaintiffs' testimony has satisfied you that the principal use of these goods, the purpose for which they are dealt in by all classes of dealers,—not dealers in millinery goods alone, but all classes of dealers in this kind of goods,—is for the making and ornamenting of hats, then you will find the issue for the plaintiffs. This is a question

of fact that is somewhat complicated, and I think it may help you somewhat if I pass over the different classifications of goods that are still left for your consideration, and call your attention to them. The first group is in the invoice of August 31, 1887, and they are numbered 6,347, 6,410, 6,244, 6,347. They are invoiced as "trimmings." The testimony of Mr. Botsford, as you will remember it,—and I may here say that neither what I read from my notes nor what I state to you as the testimony should necessarily be accepted by you as the testimony; you must be governed as to what the witnesses said from the witness stand by your own recollection, and not by my statement of my recollection. But, in a general way, it may be said that the witness, Mr. Botsford, stated that he had no sample of the goods; that they were for hat and bonnet trimmings, and used in their business solely for that purpose. They were goods, as the names would indicate, that were what might be called "textile fabrics;" that is, that they were braided, netted, or woven of cotton or silk. If they were made of silk, and silk was the component material of chief value,—that is, if they were made of cotton and silk combined, but silk was the material of chief value,—then they were properly dutiable as silk goods, and not, under clause 448, as material for hats, bonnets, and hoods. So that, if the testimony of Mr. Botsford satisfies you that these goods were composed of enough silk to say that silk was the component material of chief value, then they were properly classed for duty as goods composed of silk. And if the evidence of plaintiffs' witness leaves the matter in doubt as to the material of chief value in the goods, then the presumption would be in favor of the action of the collector, as the plaintiffs have the burden of proof. The testimony of the witness, you see, leaves it uncertain. He says that they were composed of silk or cotton, and some of them were perhaps all silk. That is my recollection of his testimony. They were classed as "manufactures of metal," and the inference—although Mr. Botsford does not describe them—the inference would seem to be that they were some kind of a textile fabric made of a silk cord or silken thread, or cotton cord or cotton thread, with a tinsel or metal wire woven in with them, to make them ornamental. They were not classed as silken material, but as a manufacture of metal. Mr. Botsford testifies unequivocally that they were used only for the purpose of trimming hats, bonnets, and hoods; and it is for you to say whether that position is established.

The next question arises under the invoice of August 25th, as to the articles numbered 1231 and 1211, described as "steel embroidery" and "embroidery." There is no sample of the goods produced, but Mr. Botsford's testimony is unequivocal that they are used only for trimmings for hats, bonnets, and hoods. There is no proof further than the name as to what they are composed of, whether it is steel wire or steel beads embroidered upon something else. They are called simply "steel embroidery." Our own common knowledge, perhaps, might prompt us to say that they were probably manufactured by working steel beads into, or knitting them into, some sort of fabric, either of cotton, linen, silk, or woolen, as the case might be. Then the next question in the same in-

voice—that is, the invoice of September 25th—is in regard to certain pieces of galloon. There were no samples produced of these. They are numbers 1,231 and 1,236, and Mr. Botsford's testimony is the same as to these. The next articles in question are from the invoice of September 15th, and one of the articles is the one numbered 5,927, which Mr. Botsford stated is "jet tulle." It is a net on which beads are put, but his testimony tends to show that it is not strong enough for dress trimming. I infer, and I suppose you will, that this was some kind of a net-work upon which jet beads were worked, and used for a hat trimming, and not adapted, as Mr. Botsford said, for dress trimming, because it was not strong enough. As one of the dressmakers or milliners explained when on the stand, it was not heavy enough to stand the abrasion and rubbing and friction to which dress trimming is subjected. Then we come to the invoice of September 7, 1887, and the articles entered and described in the invoice as "metal laces," giving numbers 19,-055, 19,054, 19,028, 19,027, 19,042, 19,025, 19,047, 19,028 again, 19,052, 19,074, 19,062. These goods were classed as a manufacture of metal not otherwise provided for, and the duty assessed at 45 per cent. ad valorem. The witness, Mr. Botsford, testified that they were all similar to the sample which he produced, marked "J. H. W.," 146,289. That, as you will perceive, is a silk or silk and cotton cord woven into a net-work, and then the interstices or meshes between the cords filled up with a wire netting. They were classed as a manufacture of metal. On that basis it must be presumed that the appraiser considered the metal as the component of chief value, and as such the controlling element in the goods themselves, and assessed at that duty. The sample which is before you speaks for itself. You know nothing, however, from the testimony as to whether this metal cost more than the silk or cotton, or both, which is in the goods, or not. I will not say that it was part of the plaintiffs' case to have shown whether or not metal was the component of chief value in these goods, because the only contention is that these were nothing but material for making and ornamenting hats; and if they were nothing but that, and there is no provision for them in any other part of the customs law,—that is, if they are not provided for in any other paragraph of the law,—then they should be classed, as claimed by the plaintiff, as material for making and ornamenting hats. But if it was made to appear that they were a manufacture composed partly of metal and partly of silk or cotton, and that the metal was the component of chief value, then they would come under another clause of the law, and the collector made no mistake in not passing them as material for trimming hats and bonnets. So that it is for you to say, in reference to all these goods which are described by comparison to this sample, whether the plaintiffs have made out a case to satisfy you that the only use of these goods is for hat trimming; that they do not properly come within the clause which assesses a duty upon manufactures of metal, or of which metal is the component part of chief value. The witness, Mr. Botsford, states that they were commonly known to the trade as "millinery laces." As I remember it, that was the name by which they were usually de-

scribed. If he wished a particular pattern he would have to transmit a sample, but that was the ordinary commercial designation. They were known "as millinery laces," and, as they speak for themselves, composed partly of metal and partly of textile material.

Then, in the same invoice, there is a series of goods numbered 6,244, 6,347, 6,409, 6,211 repeated four times, 6,408, 6,211 repeated five times, and 6,409, which were also classed as a manufacture of metal, and duty assessed at 45 per cent. *ad valorem.* Mr. Botsford had no sample of these, but testified, however, in substance, that they were all used for hat and bonnet material and trimmings, and for no other use. We now come to Nos. 221, 237, 240, 236, 236, 236 again,— all goods in the same invoice; that is, the invoice of September 7th,— which are entered on the invoice as "fancy ornaments." The witness testified that they were a kind of chenille; that some of them, as I remember the testimony, were, if not all of them, silk chenille. You perhaps are familiar enough, if you have wives and daughters, to know that chenille is a sort of cord from which threads are cut, making a description of round velvet cord; that is, the threads are cut so that they project from the sides of the cord in a horizontal direction, and they are cut at greater or less length, according to the uses to which they are to be put, to make a fringed cord. This fringe goes all around it. Mr. Botsford testified in regard to these goods that they were trimmings for hats, bonnets, etc. They were assessed by the collector as a manufacture of silk, at a duty of 50 per cent. *ad valorem.* There is no proof here as to the quantity of silk. In the absence of any proof upon that subject, I think that the collector's classification, as goods composed of silk, or of which silk was the material of chief value, must be considered as binding, unless you are satisfied that they have no other use whatever than that of a trimming for hats, bonnets, and hoods. If the chenille has any other use, then the plaintiffs have not made out a case. Then there were four kinds of ornaments that were classed as "a manufacture of silk." The witness describes them as silk bands, with embroidered ends. He says they were used for hat-bands, or trimming for hats; the embroidered ends being allowed to hang loose. If they were in fact silk bands, then they were properly classified as silk, although they might have been used for ornamenting a bonnet or hat.

This, gentlemen of the jury, is the case as far as the details are concerned, and it is for you to say whether any, and, if so, how many, of these goods are shown to you to be strictly materials for making and ornamenting hats, on which no duty was otherwise provided for; and also for you to say, as I have already said, whether the plaintiffs have satisfied you that the goods are such as were used only for the general purpose of trimming and ornamenting hats, bonnets, and hoods.