50 CCPA(Customs)

The **UNITED STATES (Index Industrial Corp., Party in Interest), Appellant,**

v.

**NATIONAL STARCH PRODUCTS, INC., Appellee.**

Customs Appeal No. 5088.

United States Court of Customs and Patent Appeals.

Dec. 12, 1962.

Martin L. Friedman, Washington, D. C., William J. Barnhard, Bruce E. Clubb, Washington, D. C. (Chapman & Friedman, Washington, D. C., of counsel), for Index Industrial Corp., party in interest.

Lamb & Lerch, New York City (J. G. Lerch, New York City, of counsel), David A. Golden, New York City, for appellee.

Herbert A. Fierst, Washington, D. C., amicus curiæ.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

In a decision dated May 18, 1962, we affirmed the decision of the Customs Court which had sustained an American manufacturer's protest under section 516(b) of the Tariff Act of 1930, as modified by the Annecy Protocol to the GATT, T.D. 52373, supplemented by Presidential Proclamation, T.D. 52462. The imported merchandise is 4' x 8' sheets of "particle board."

Appellant filed a Petition for Rehearing which was granted and the matter has been reheard. On the rehearing it was appellant's position that:

(a) Appellee, under its "dual burden," must show not only that the imported merchandise was wrongly classified but also must show where it should have been classified.

(b) Appellee to prevail must therefore show the correct classification of the imported merchandise to be under para. 1539(b).

(c) To prevail, appellee must establish that the imported 4' x 8' sheets of particle board are "manufactures of" a "product of which any synthetic resin or resin-like substance is the chief binding agent."

(d) Under United States v. J. E. Bernard & Co., 42 CCPA 69, C.A.D.

573, a "product" for purposes of paragraph 1539(b) must have independent existence as an article of commerce. The only "product" having a binding agent of a "synthetic resin or resin like substance" having independent commercial existence is the particle board itself.

(e) Under applicable decisions of the Supreme Court and this court, sanding and cutting unfinished particle board to the imported 4' x 8' sizes does not make a "manufacture of" the product under paragraph 1539(b) and the Customs Court and this court in its original decision were in error in sustaining the protest.

Upon reconsideration we are convinced that appellant is correct and that our original decision was in error. We hereby withdraw it, substituting therefore the following opinion.

The Index Industrial Corp., Party in Interest, hereafter referred to as appellant, imported the merchandise in issue which was classified[1] as "wallboard" under the provisions of paragraph 1402 of the Tariff Act of 1930, as modified by the Annecy Protocol to the GATT, T.D. 52373, supplemented by Presidential Proclamation, T.D. 52462. Duty was assessed thereon at 5 per cent ad valorem. Appellee, an American manufacturer, protested the entry pursuant to the provisions of section 516(b) of that Act as amended (19 U.S.C. 1516(b) ), claiming the merchandise properly classifiable under paragraph 1539(b) of said Act, as modified by the Sixth Protocol of Supplementary Concessions to the GATT, T.D. 54108, as manufactures wholly or in chief value of any product of which a synthetic resin is the chief binding agent. The Customs Court sustained the protest, C.D. 2256. Appellant appeals from that judgment.

---

[1] Exhibit 1–J, a letter from the collector to appellee notifying the latter of the import, states in part:
"Please note Entry No. 782774 was made at this port on Sept. 18, 1959 and

covered eight crates of virola chip board in sheets size 4' x 8'. This entry was liquidated on Dec. 16, 1959 under paragraph 1402 at 5% ad valorem as wall board."

The respective provisions read:

Paragraph 1402 and T.D. 52373:

"Paper board, wallboard, and pulp-board, including cardboard (but not including leather board or compress leather, and except strawboard, solid fiber shoe board and all counter board, and pulp-board in rolls for use in the manufacture of wallboard), not plate finished, super-calendered or friction calendered, laminated by means of an adhesive substance, coated, surface stained or dyed, lined or vat-lined, embossed, printed, decorated or ornamented in any manner, nor cut into shapes for boxes or other articles and not specially provided for:

"Wallboard and wet-machine board other than beer mat board ............... 5% ad val."

Paragraph 1539(b) and T.D. 54108:

"Laminated products (whether or not provided for elsewhere in the Tariff Act of 1930 than in paragraph 1539(b) thereof) of which any synthetic resin or resin-like substance is the chief binding agent:

\* \* \* \* \* \*

"Manufactures wholly or in chief value of any product described in the preceding item 1539(b), or of any other product of which any synthetic resin or resin-like substance is the chief binding agent ...................21¢ per lb. and 17 percent ad val."

While the record does not show the composition of the imported particle board, it does show that it corresponds to a domestic particle board which is made from chips, flakes or splinters of wood which are impregnated with a synthetic resin, then pressed into sheets in a hot plate press.[2]

The Customs Bureau classifies particle board under paragraph 1539(b) unless it is imported in "standard wallboard sizes," [3] in which case it is classified as

---

2. In the instant case neither party presented evidence describing the method of making the particular importation. However, the following testimony for appellee was given on direct examination by a Mr. Fischer, sales manager of the United States Plywood Corporation, the company which manufactures a particle board known as "Novoply:"

"Q. Will you look at the sample which I hand you, and state whether or not that is a sample of the particle board as you merchandise it? A. That is a sample of Novoply, and it comes under the generic term of particle board. [The sample was marked as plaintiff's Exhibit 6].

\* \* \* \* \*

"Q. Will you examine Exhibit 2 and 3, [Exhibit 3 is a sample of virola board representative of the imported merchandise], and compare them with Exhibit 6? A. Yes. This Virola board is also a particle board, with fine particles apparently on the surface. It looks like they are a little more coarse in the center.

"Q. The same class or kind of merchandise as Exhibit 6, your merchandise is? A. Yes, they are both particle boards.

\* \* \* \* \*

"Q. Will you just briefly describe how those two component materials are united to form Exhibit 6? A. The method of manufacture?

"Q. Yes, just briefly. A. First of all, you have fir logs which are used in the manfacture of plywood. The residue left on the lath[e] is cut into slabs, and then flaked to make the top and bottom surface. Those flakes are spread in a pan. First resin is applied to them, and then they are spread into a pan, and it is an automated factory; the pan goes along and then the center; the particles are put into the pan. It goes to a third station, and flakes are put in to form the surface. Both the particles and the flakes have been impregnated with resin. These flakes and particles are put through a machine having rollers as its main part, and these bounce over the rollers and pick up the resin. Then after it is laid in these pans, it is a slab; the sides are taken away, and it is pressed in a hot plate press, and *it is cut and sanded*." [Emphasis added.]

3. The customs examiner who passed the instant importation testified that the standard sizes were "4 by 6; 4 by 8; 4 by 10 mainly. Walls are built with 16 inch center joists, and in order to be

wallboard under paragraph 1402. This classification is based on an investigation made in 1948 which determined that wallboard was the chief use of particle board imported in standard wallboard sizes.

■ Our decision herein is controlled by the long established principle that the burden of proof is on a protestant to show not only that the collector's classification is wrong but also to establish the classification of the merchandise in issue which is asserted by the protestant to be the proper classification.[4] As recently stated in Atlantic Aluminum & Metal Distributors, Inc. v. United States, 47 CCPA 88, C.A.D. 735:

"It is axiomatic that a presumption of correctness attaches to the collector's classification. Lowenthal [Loewenthal] Trimming Corp. v. United States, 39 CCPA 149, C.A.D. 477; McKesson & Robbins, Inc. v. United States, 27 CCPA 157, C.A.D. 77. To overcome this presumption, the protestant has the burden of proving not only that the collector erred, but also that the classification urged by the protes-

tant is correct. W. T. Grant Company v. United States, 38 CCPA 57, C.A.D. 440; United States v. Good Neighbor Imports, Inc., 33 CCPA 91, C.A.D. 321; United States v. Fred. Gretsch Mfg. Co., Inc., 28 CCPA 26, C.A.D. 120."

Unless there is substantial evidence in the record to establish the propriety of the protestant's asserted classification of the imported merchandise, the protest must be overruled and it is unnecessary to consider whether or not the collector's classification is wrong. United States v. H. V. Albrecht, etc., 27 CCPA 112, 117, C.A.D. 71; W. T. Grant Co. v. United States, 38 CCPA 57, 65, C.A.D. 440; United States v. Cody Manufacturing Co., Inc. et al., 44 CCPA 67, 74, C.A.D. 639; Davies et al. v. Miller et al., 2 Cir., 91 F. 647.

■ We shall, therefore, consider at the outset whether appellee sustained its burden of proof of establishing that the imported 4′ x 8′ sheets of particle board were properly classifiable under paragraph 1539(b). We shall start our consideration of this matter with an analysis from which it will be seen that para-

---

used as wallboard it has to be in multiples of 16 inches."

4. The many cases in this court in which the so-called "dual burden" of proof has been applied were based on principles long established by the Federal Courts in dealing with customs cases. This long established rule appears to have its origin in Arthur v. Unkart, 96 U.S. 118, 24 L. Ed. 768 (1877). There, is an action against the collector to recover the amount of duties alleged to have been exacted in violation of law, the lower court had charged the jury that the burden of proof was on the collector to show, by a fair preponderance of the evidence, that the goods had been properly classified. In a decision reversing the judgment below, Mr. Justice Hunt stated:

"The importers here bring their suit, alleging in their complaint not merely that there was an exaction of duties, but that such exaction was excessive and illegal. The burden of proof is upon the party holding the affirmative of the issue.

\* \* \* \* \*

"Again, it is to be observed that in the case of the articles in question, as with most other importations, they were admitted to be liable to some duty. Simply holding the goods for duty was not, therefore, of itself an illegality. *It was only when they were held for more duty than the law justified that it became duress and illegal; and, to entitle himself to recover for the illegality, the plaintiff must show such excessive charge. If the collector had no authority in the premises, and could hold the goods for no amount whatever, a different question would arise. But here the very issue was as to amount, and the proof, therefore, of illegal amount rested upon the plaintiff.*" [Emphasis added.]
See also Strakosh v. United States, 1 CCPA 360, T.D. 31453, United States v. Danker & Marston, 2 CCPA 462, T.D. 32208, Tiffany v. United States, 2 Cir., 105 F. 766, and the charge to the jury in Fisk et al. v. Seeberger, 7 Cir., 38 F. 718.

graph 1539(b) establishes three categories of merchandise as follows:

(1) Laminated products of which any synthetic resin or resin-like substance is the chief binding agent.

(2) Manufactures wholly or in chief value of any of the foregoing laminated products.

(3) Manufactures wholly or in chief value of any other product of which any synthetic resin or resin-like substance is the chief binding agent.

The only contention which has been advanced here by appellee is that the imported 4′ x 8′ sheets of particle board fall within the third category, stating in its protest that:

" * * * We claim the imported merchandise to be properly classifiable under paragraph 1539(b). * * * The reason for our claim is that the merchandise is a *manufacture wholly or in chief value of any product* of which synthetic resin is the chief binding agent * * *." [Emphasis added.]

Appellant's contention that appellee has failed to show the merchandise properly classifiable under paragraph 1539 (b), is predicated on the theory that the importation is not a *manufacture of a product* having the requisite chief binding agent. Appellant concedes that the importation is a "product" having the required binding agent.

The decision of this court mainly relied upon by counsel involving that issue is United States v. J. E. Bernard & Co., Inc., 42 CCPA 69, C.A.D. 573. There it was held that washing machine agitators made of Bakelite were properly classified under paragraph 1539(b). The court found that Bakelite, "consisting basically of synthetic phenolic resin and finely ground cotton linters," had an independent commercial existence as a molding compound which was purchased by molding companies and formed into various articles.

 It appears from the testimony herein that the domestic particle board "Novoply" is subjected, after it leaves the press, to sanding and cutting operations. No evidence was presented to show that the imported "Virola" board was made by a different process. There appears to be no question but that "Novoply" and the imported "Virola" particle board are of the same class or kind of merchandise and are adapted to the same uses. It therefore would seem to be a reasonable and non-rebutted inference of fact that the two articles are made by substantially the same process. Thus, it would appear that after the unfinished "Virola" particle board leaves the hot press, it too would be sanded and cut into the imported 4′ x 8′ sheets. Under the J. E. Bernard case, relied on by appellant, the *"product"* of which synthetic resin is the chief binding agent of paragraph 1539(b) must have an independent commercial existence before it constitutes a *"product"* in the sense of section 1539(b) from which "manufactures wholly or in chief value" of such *"product"* can be made. See also Cohn & Lewis v. United States, 25 CCPA 220, T.D. 49335 and United States v. Accurate Millinery Co. et al., 42 CCPA 229, C.A.D. 599. If, therefore, the "product" were the cut and sanded 4′ x 8′ sheets of particle board *as imported,* then the imported merchandise cannot logically also be a "manufacture" of that "product," since the "manufacture" and the "product" are identical. A contrary interpretation would render meaningless the words "product" and "manufactures" in paragraph 1539(b).

If, however, we assume, *arguendo,* that the "product" is the unfinished particle board before it is cut and sanded,[5] the issue thus presented is whether, under the applicable authorities, the cutting

---

5. We make this assumption *arguendo* because we doubt that uncut and unsanded particle board can be said to have independent commercial existence. There is no evidence in the record on this question.

and sanding operations transform the unfinished particle board "product" into a "manufacture of" particle board so as to be properly classified within the third category of paragraph 1539(b).

Appellant's Brief in Support of Petition for Rehearing, in analyzing what is termed "The 'Manufacture of' Problem" contains the following analysis and conclusions which we here adopt.

"(a) It is clear from a long line of decisions of this Court and the Supreme Court that in order for an article to be a 'manufacture of' a preceding thing, there must be a transformation of the thing into a new article of commerce.

"(b) It is clear from the facts of this case that the particle board involved is merely cut and sanded after becoming a 'product * * * of which synthetic resin is the chief binding agent', and it is also clear that such cutting and sanding does not transform the particle board into a new article of commerce.

"(c) Therefore, since the cutting and sanding operation applied to the 'product of which the chief binding agent is synthetic resin' does not transform it into a new article of commerce, the imported article is not a 'manufacture of' such product and, therefore, is not properly classifiable under paragraph 1539(b)."

We think the foregoing conclusions are required by the pertinent rulings of the U. S. Supreme Court in Hartranft v. Wiegmann, 121 U.S. 609, 7 S.Ct. 1240, 30 L.Ed. 1012 and United States v. Dudley, 174 U.S. 670, 19 S.Ct. 801, 43 L.Ed. 1129.

In the Hartranft case, the collector had classified certain processed sea shells as "Shells, manufactures of;" and the importer brought an action to recover duties paid thereunder. The lower court found that the processed shells were not "manufactures of shells" and the Supreme Court affirmed with the following comment:

"* * * The question is, whether cleaning off the outer layer of the shell by acid, and then grinding off the second layer by an emery wheel, so as to expose the brilliant inner layer, is a manufacture of the shell, the object of these manipulations being simply for the purpose of ornament, and some of the shells being afterwards etched by acids, so as to produce inscriptions upon them. It appears that the shells in question were to be sold for ornaments, but that shells of these descriptions have also a use to be made into buttons and handles of pen-knives; and that there is no difference in name and use between the shells ground on the emery wheel and those not ground. It is contended by the government that shells prepared by the mechanical or chemical means stated in the record, for ultimate use, are shells manufactured, or manufactures of shells, within the meaning of the statute.

*　　*　　*　　*　　*　　*

"We are of opinion that the shells in question here were not manufactured, and were not manufactures of shells, within the sense of the statute imposing a duty of 35 per centum upon such manufactures, * * *. They were still shells. They had not been manufactured into a new and different article, having a distinctive name, character or use from that of a shell. The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff laws." (121 U.S. 613–615, 7 S. Ct. 1242–1243.)

In the Dudley case, the collector had imposed a 25% duty on certain lumber boards which had been planed, tongued and grooved on the theory that they were "manufactures of wood" rather than "sawed boards, plank, deals and other lumber, rough or dressed." The im-

porter's protest was sustained by the lower court and the Supreme Court affirmed stating:

" * * * While lumber planed upon one or both sides may be 'dressed lumber', we think that when tongued and grooved it is still 'dressed lumber,' and not a new and distinct manufacture. In other words, that tonguing and grooving is an additional dressing, but it does not make it a different article. Lumber treated in this way is still known in the trade as lumber; advertised as lumber; handled as lumber; shipped as lumber; bought and sold by the thousand feet like lumber." (174 U.S. at 673–674, 19 S.Ct. at 801–802.)

These cases as well as numerous others require that to be a "manufacture of," there must be a transformation of the starting material into a new article of commerce. "There must be transformation; a new and different article must emerge, 'having a distinctive name, character or use.'" Anheuser-Busch Brewing Ass'n. v. United States, 207 U.S. 556, 562, 28 S.Ct. 204, 206, 52 L.Ed. 336.

Upon reconsideration we hold that the imported 4' x 8' panels of finished particle board on which the protest was filed cannot logically be both a *"manufactures" of and* the "product" from which the "manufactures" are made as contemplated by paragraph 1539(b). Under the applicable authorities we find that sanding and cutting *unfinished* particle board, after it comes from the hot press, do not transform it into "manufactures" of that "product" as contemplated by paragraph 1539(b).

Appellee has not attempted to establish that the imported 4' x 8' sheets of particle board are "manufactures of" particle board but has been content instead with proofs directed to the alleged error of the collector in classifying the imported sheets as wallboard. The record is clear that if the sheets as imported are of a 4' x 8' size they are classified as wallboard by reason of their chief use.

We need not, however, pass on appellee's contention that the uses made of the imported sheets take them out of the wallboard classification. It is sufficient for the present case that appellee did not establish by evidence of record that the imported 4' x 8' sheets of particle board are "manufactures of" a "product" which fall within the 3rd category specified in paragraph 1539(b).

For the foregoing reason, the judgment of the Customs Court is reversed.

Reversed.

WORLEY, C. J., sat but did not participate in decision.