## UNITED STATES *v.* DUDLEY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 108. Argued April 19, 1899. — Decided May, 22, 1899.

Sawed boards and plank, planed on one side and grooved, or tongued and grooved, should be classified under the tariff act of August 28, 1894, 28 Stat. 508, as dressed lumber, and admitted free of duty.

THIS case originated in a petition filed in the Circuit Court of the United States for the District of Vermont, for the review of a decision of the board of general appraisers to the effect that certain imports made by the petitioner into the port of Newport, of "sawed boards and plank, planed on one side, tongued and grooved," and entered as "dressed lumber," were not entitled to be admitted free of duty as "sawed boards, plank, deals and other lumber, rough or dressed," under the tariff act of August 28, 1894.

In June, 1895, Dudley imported from Canada eight carloads

of boards and plank, planed on one side and grooved, or tongued and grooved. The collector imposed a duty of twenty-five per cent upon this lumber as a "manufacture of wood," under paragraph 181 of the tariff act of August 28, 1894, c. 349, 28 Stat. 509, 521, which reads as follows: "House or cabinet furniture, of wood, wholly or partly finished, manufactures of wood or of which wood is the component material of chief value, not specially provided for in this act, twenty-five per centum ad valorem."

The importer protested, claiming that they should have been imported free of duty as "dressed lumber" under paragraph 676.

The board of general appraisers sustained the action of the collector; and the importer filed this petition for review in the Circuit Court, which reversed the decision of the board. On appeal by the United States to the Circuit Court of Appeals, where the cause was heard by two judges, who were divided in opinion, the judgment of the Circuit Court was affirmed.

Whereupon the United States applied for and were granted a writ of certiorari from this court.

*Mr. Assistant Attorney General Hoyt* for the United States.

*Mr. C. A. Prouty* for Dudley.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

The imports in this case were eight carloads of spruce board and plank, planed on one side, and tongued and grooved. They varied from one to three inches in thickness; from four to eleven inches in width, and from twelve to twenty feet in length. Some were "butted to exact lengths." They were prepared for use by what is known as a "flooring machine," which is a combination of a simple planing machine with a matching — or tonguing and grooving — machine. Some of the smaller mills use separate machines for planing and matching, the combination machine seeming to be of comparatively

recent origin. The boards were adaptable for flooring, ceiling, sheathing, etc.

They were assessed for duty under paragraph 181 of the tariff act of August 28, 1894, which imposed a duty of twenty-five per cent ad valorem upon " house or cabinet furniture, of wood, wholly or partly finished, manufactures of wood or of which wood is the component material of chief value, not specially provided for in this act."

Upon the other hand, the importer insisted that they should have been admitted free of duty under paragraph 676, which exempts " sawed boards, plank, deals and other lumber, rough or dressed," except certain lumber of valuable cabinet woods.

Forty-seven witnesses were examined before the board of general appraisers, twenty-three of whom testified that lumber which had been planed, grooved, tongued or beaded was still " dressed lumber," even when finally shaped for the carpenter to put together in roofing, flooring, ceiling, etc., and twenty-four testifying, in substance, that the term was only applicable to such as had been merely planed upon one or both sides, and brought to an even thickness. It was admitted by witnesses upon both sides that in ordering such articles the term " dressed lumber" would not sufficiently describe them, and that they were usually ordered by description or by their specific designation, as flooring, etc.

Ordinarily, the fact that an article in the process of manufacture takes a new name is indicative of a distinct manufacture, as was intimated in *Tide Water Oil Co.* v. *United States,* 171 U. S. 210, but we do not think it important in this case that " dressed lumber" is divisible into flooring, sheathing and ceiling, since sawed lumber is none the less sawed lumber, though in its different forms and uses it goes under the names of beams, rafters, joists, clapboards, fence boards, barn boards and the like. In other words, a new manufacture is usually accompanied by a change of name, but a change of name does not always indicate a new manufacture. Where a manufactured article, such as sawed lumber, is usable for a dozen different purposes, it does not ordinarily become a new manufacture until reduced to a condition where it is used for one

thing only. So long as "dressed lumber" is in a condition for use for house and ship building purposes generally, it is still "dressed lumber;" but if its manufacture has so far advanced that it can only be used for a definite purpose, as sashes, blinds, mouldings, spars, boxes, furniture, etc., it becomes a "manufacture of wood." It follows that the words "flooring, ceiling, sheathing," do not under this act describe a new manufacture, but rather the different purposes for which sawed lumber may be used. It is much like the commercial division of lumber into "selects, common and culls," which are all lumber, but of different qualities. None of these are in reality new names, but merely specifications of the more general term "lumber." Indeed a manufacturer receiving an order for lumber could not possibly fill it to the satisfaction of his customer, without knowing the purpose for which it was designed, or the quality desired.

The fact that "dressed lumber" is ordered under the names of flooring, ceiling, sheathing, does not indicate that it is not still "dressed lumber," but rather that it is of a quality or width specially adapted to those purposes. Had it been of a particular quality, width and thickness, and sawn into lengths which would make it usable only for the manufacture of boxes, perhaps it might be termed a "manufacture of wood" for the purposes of this act. It is true that the lumber in question was in a condition to be used for flooring without further manufacture, except such reductions in length as the dimensions of the room might require; but it was also usable for ceiling, sheathing and for similar purposes with no further alterations. Had it so far been changed as to be serviceable for only one thing, it is possible that it might be regarded as a separate and independent manufacture, though under the case of *Tide Water Oil Co.* v. *United States*, 171 U. S. 210, this may admit of some doubt. But while lumber planed upon one or both sides may be "dressed lumber," we think that when tongued and grooved it is still "dressed lumber," and not a new and distinct manufacture. In other words, that tonguing and grooving is an additional dressing, but it does not make it a different article. Lumber treated in this

way is still known in the trade as lumber; advertised as lumber; handled as lumber; shipped as lumber; bought and sold by the thousand feet like lumber.

We also think that some light upon the proper construction of the words "manufacture of wood" in paragraph 181 is afforded by the fact that it is used in connection with "house or cabinet furniture of wood, wholly or partly finished," and is followed by the words "or of which wood is the component material of chief value." This would indicate an article "made up" of wood analogous to furniture or other article in which wood is used alone or in connection with some other material. It seems to us quite clear that it could not have been intended to apply to lumber which had only passed beyond the stage of planed lumber by being tongued and grooved.

Upon the facts of the present case we are of opinion that the imports in question should have been classified as "dressed lumber," and the judgment of the Circuit Court of Appeals is therefore

*Affirmed.*