F. W. MYERS & CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.    May 22, 1906.)

No. 144 (1,670).

CUSTOMS DUTIES—CLASSIFICATION—FIREPROOFED LUMBER.

Lumber which has been subjected to a fireproofing process that largely increases its value, but which can still be applied to the ordinary uses of sawed lumber, is not dutiable as manufactures of wood, not specially provided for, under paragraph 208, Tariff Act July 24, 1897, c. 11, § 1, Schedule D, 30 Stat. 168 [U. S. Comp. St. 1901, p. 1647], but as "sawed lumber," under paragraph 195, 30 Stat. 167 [U. S. Comp. St. 1901, p. 1646].

Wallace, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern District of New York.

For decision below, see 139 Fed. 344, which reversed decisions of the Board of United States General Appraisers, which had reversed the assessment of duty by the collector of customs at the port of Plattsburg.    Note G. A. 5,827 (T. D. 25,715).

Comstock & Washburn (Albert H. Washburn, of counsel), for importers.

George B. Curtiss, U. S. Atty.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM.    This cause involves customs duties on "fire proofed lumber."    It is reported below in 139 Fed. 344.    In the opinion of a majority of the court the decision of the United States Supreme Court in U. S. v. Dudley, 174 U. S. 670, 19 Sup. Ct. 801, 43 L. Ed. 1129, is controlling.

The decision of the circuit court is therefore reversed, and that of the Board of General Appraisers is affirmed.

WALLACE, Circuit Judge (dissenting).    The importations in question are fireproofed lumber, and consist of oak and white pine sawed lumber which has been treated for the purpose of making it fireproof by a process by which it is chemicalized.    The process involves softening the lumber and opening its pores, withdrawing the sap, injecting the chemicals into the fiber of the wood, and then treating the wood with heat until it is perfectly dry, thereby crystallizing the solution of the chemicals in the fiber of the wood.    The treatment is an expensive one, and the cost of combining the chemicals with the lumber is about $19 per 1,000 feet, and doubles the market value of the cheaper varieties.

The question raised by this appeal is whether such fireproofed lumber is subject to duty under paragraph 195 or paragraph 208 of the tariff act of July 24, 1897, c. 11, § 1, Schedule D, 30 Stat. 167, 168 [U. S. Comp. St. 1901, pp. 1646, 1647].    Paragraph 195 prescribes the duty on "sawed boards, planks, deals, and other lumber of white wood; sawed lumber not specially provided for in this act."    Para-

graph 208 prescribes the duty on "house or cabinet furniture, of wood, wholly or partly finished, and manufactures of wood, or of which wood is the component material of chief value, not specially provided for."

It is not disputed that wood was the component material of chief value in the importations in controversy.

The Board of General Appraisers were of opinion that the importations should be classified as sawed lumber. That opinion was mainly influenced by the decision of the Supreme Court in the case of the United States v. Dudley, 174 U. S. 670, 19 Sup. Ct. 801, 43 L. Ed. 1129. The majority of this court, in affirming the decision of the Board of General Appraisers, do so because they consider the Dudley Case controlling.

It was decided in the Dudley Case that sawed boards and planks, planed on one side and grooved, or tongued and grooved, were "dressed lumber," and dutiable as such under paragraph 676 of the tariff act of August 28, 1894, c. 349, § 2, Free List, 28 Stat. 546, rather than as a "manufacture of wood," under paragraph 181 of the act, § 1, Schedule D, 28 Stat. 521. Everything that was said in the opinion in discussing paragraph 181 was unnecessary to the decision. In the present act paragraph 208 is a substitute for that paragraph, and it is hardly conceivable that as the paragraph has been changed in the present act any court would hold that it enumerates only such manufactures of lumber as are ejusdem generis with "house or cabinet furniture." The gist of the decision in the Dudley Case was that, so long as dressed lumber is in a condition for use for all the ordinary uses of lumber, it is still dressed lumber; but if its manufacture has been so far advanced that it can only be used for a definite purpose, it becomes a manufacture of wood.

It is true that fireproofed lumber, sawed, can be used for any of the purposes for which ordinary sawed lumber is used; and if anybody chooses to use it for making a water tank, or a sidewalk, or any kind of wooden structure or article, even for making kindling wood, it will answer the purpose. In my judgment, this consideration is not controlling. Fireproofed lumber is capable of a use for which ordinary lumber is not adequate and is not adapted; and by the process which has been applied to it the original lumber has been advanced into a new material adapted to a particular use, that of making fireproof structures. It seems to me almost absurd to hold that wood which has been combined with other materials at such expense and labor as to nearly double its commercial value is not to be considered as a manufacture, and as such covered by paragraph 208, merely because, notwithstanding what has been done to it, it can still be applied to all the uses of ordinary sawed lumber, if no regard is had to the extravagant and foolish nature of the use.

The test generally applied to determine whether an article which has been advanced from its crude or original state of labor, either by hand or by mechanism, is a manufacture within the meaning of the tariff laws, is whether what has been done has produced a new and different article, having a distinctive name, character, or use from that of the original material. Hartranft v. Wiegmann, 121 U. S. 615, 7

Sup. Ct. 1240, 30 L. Ed. 1012. The importations in question have a distinctive name, a distinctive character, and a distinctive use. In practical application, however, the test is very elastic and elusive, and the question in the particular case can often be better determined by common sense than by the use of definitions and fine-drawn distinctions.

I think the decision of the Circuit Court reversing that of the Board of General Appraisers was correct, and should be affirmed.