UNITED STATES *v.* NIPPON YUSEN KAISHA (No. 2193).[1]

1. BIBULOUS PAPER AND MANUFACTURES OF.

Bibulous paper which is merely cut to size for blotters acquires a new name, but as it is not thereby fitted for a new use and undergoes no manufacturing process which renders it unsuitable for use as bibulous paper it continues to be bibulous paper and is therefore not an article manufactured from that kind of paper. When, however, bibulous paper is not only cut to size, but is printed, it ceases to be available for all of the uses to which such paper may be devoted and is fitted for a use which is not characteristic of unprinted bibulous paper. The printing of bibulous paper transforms it into a manufactured article.

2. RELATIVE SPECIFICITY.

The provision of paragraph 329, tariff act of 1913, for printed matter is more specific than that of paragraph 323 for manufactures of paper.

3. PRINTED BLOTTERS.

Paper blotters, printed with an advertisement, are more specifically provided for as printed matter (par. 329, tariff act of 1913) than as manufactures of bibulous paper (par. 323) and dutiable accordingly.

[1] T. D. 39535.

United States Court of Customs Appeals, March 17, 1923.

APPEAL from Board of United States General Appraisers, Abstract 45008.

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellee.

[Oral argument November 21, 1922, by Mr. Charles D. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH and BARBER, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

Paper blotters on which was printed an advertisement of the "Nippon Yusen Kaisha," otherwise known as the Japan Mail Steamship Co. (Ltd.), were classified by the collector of customs as manufactures of bibulous paper and assessed for duty at 30 per cent ad valorem under that part of paragraph 323 of the tariff act of 1913, which reads as follows:

323. Paper commonly known as copying paper, stereotype paper, *bibulous* paper, * * * and articles manufactured from any of the foregoing papers or of which such paper is the component material of chief value, 30 per centum ad valorem.

The importer protested that the blotters on which was printed the advertisement referred to were "printed matter" and that they were therefore not subject to a duty of 30 per cent ad valorem as articles manufactured from bibulous paper, but to a duty of 15 per cent ad valorem under that part of paragraph 329 which reads as follows:

329. Books of all kinds, bound or unbound, * * * and printed matter. All the foregoing and not specially provided for in this section, 15 per centum ad valorem.

The Board of General Appraisers sustained the protest and the Government appealed. In support of the appeal it is contended that the designation, "articles manufactured from bibulous paper," more specifically describes the blotters than "printed matter," and that therefore they are dutiable under paragraph 323 and not as provided in paragraph 329.

Bibulous paper is unsized paper which readily absorbs moisture and which when cut to appropriate dimensions may be used as blotting paper. (See "Bibulous"—Standard Dictionary; See "Blotter," Century Dictionary; New English Dictionary.) Bibulous paper which is merely cut to size for blotters acquires a new name, but as it is not thereby fitted for a new use and undergoes no manufacturing process which renders it unsuitable for use as bibulous paper, it continues to be bibulous paper and is therefore not an article manufactured from that kind of paper. (T. D. 23667); Dennison *v.* United States (72 Fed. 258–260); De Jonge *v.* Magone (159 U. S. 562); Hartranft *v.* Wiegmann (121 U. S. 609–615); United States *v.* Dudley (174 U. S. 670).

When, however, bibulous paper is not only cut to size, but is printed, it ceases to be available for all the uses to which such paper may be devoted and is fitted for a use which is not characteristic of unprinted bibulous paper. The printing of bibulous paper transforms it into a manufactured article, and a manufactured article which falls within the category of printed matter.—United States *v.* Deutsch (178 Fed. 272).

If there were no provision for printed matter, the printed blotters might well be subjected under paragraph 323 to duty as articles manufactured from bibulous paper, and if there were no provision for manufactures of bibulous paper, the importation could certainly be assessed for duty as printed matter under paragraph 329.

Whether the goods should be subjected to the duty prescribed by one provision or the other depends solely on which of the two provisions is the more specific and that in its turn depends on which of the designations used is the less comprehensive. "Articles manufactured from any of the foregoing papers" includes not only printed bibulous paper but articles of every kind and character made of paper or bibulous paper.

Printed matter is not so all-embracing a designation as articles manufactured of paper or of bibulous paper and is limited to manufactures of paper or of bibulous paper which are printed. As "printed matter" covers only one kind or class of articles made of paper or of bibulous paper and "articles manufactured of the foregoing papers" covers all articles of every nature and character made of paper or bibulous paper, it is evident that paragraph 329 rather than paragraph 323 more specifically provides for the importation. The printed blotters were therefore dutiable at 15 per cent ad valorem as "printed matter" and not at 30 per cent ad valorem as articles manufactured from bibulous paper as found by the collector.

The decision of the Board of General Appraisers is therefore *affirmed.*