THOMPSON-STARRETT CO. *v.* UNITED STATES (No. 2262).[1]

MARBLE TILES—MANUFACTURES OF MARBLE—KNOCKDOWN FLOORS.

Marble tiles which have been furnished from stock in selected sizes, shapes, and colors to make floors for particular rooms are not to be regarded as floors in a knockdown condition and classified as manufactures of marble under paragraph 98, tariff act of 1913. They are material for manufacturing the floors, and are classifiable as marble tiles under paragraph 97.

United States Court of Customs Appeals, January 19, 1924.

APPEAL from Board of United States General Appraisers, Abstract 45615.

[Reversed.]

*Brooks & Brooks* (*Ernest F. A. Place* and *Frederick W. Brooks, jr.,* of counsel) for appellant.

*William W. Hoppin,* Assistant Attorney General (*Ralph Folks,* special attorney, of counsel), for the United States.

[Oral argument December 11, 1923, by Mr. Place and Mr. Hoppin.

Before MARTIN, Presiding Judge, and SMITH, BARBER, and BLAND, Associate Judges; HATFIELD, Associate Judge, participating in the decision by agreement of counsel.

[1] T. D. 39979.

Martin, Presiding Judge, delivered the opinion of the court:

It appears from the undisputed testimony in this case that in the year 1921 the appellant was a contracting company engaged in the business of procuring supplies and erecting buildings in this country, and that it then had under construction a certain large apartment house in the city of New York. The foyer floors of this building were to be made of marble tiles, and these were ordered by the appellant from abroad. In that transaction the foreign dealer was furnished with blue prints showing the dimensions of the floors in question, and in turn he exhibited samples of certain tiles carried by him in stock, and also certain prepared illustrations showing how they might best be adapted to the specified dimensions.

The present merchandise consists of the marble tiles thus ordered by the appellant. The tiles were of various shapes, sizes, and colors, and were designed for use in the construction of the floors in question conformably with the plans and illustrations above referred to.

The appraiser reported that they were dutiable at the rate of 45 per cent ad valorem, under the enumeration of manufactures of marble contained in paragraph 98 of the tariff act of 1913, and the collector assessed duty accordingly. The assessment was protested upon the claim that the articles were dutiable as slabs or paving tiles of marble at the rate of 6 and 8 cents per superficial foot, according to thickness, under paragraph 97 of the same act.

The Board of General Appraisers overruled the protest, and this appeal was taken from its decision.

The following is a copy of the competing provisions thus cited:

97. * * *: Slabs or paving tiles of marble or onyx, containing not less than four superficial inches, if not more than one inch in thickness, 6 cents per superficial foot; if more than one inch and not more than one and one-half inches in thickness, 8 cents per superficial foot; if more than one and one-half inches and not more than two inches in thickness, 10 cents per superficial foot; if rubbed in whole or in part, 2 cents per superficial foot in addition. * * *.

98. Marble, breccia, onyx, alabaster, and jet, wholly or partly manufactured into monuments, benches, vases, and other articles, or of which these substances or either of them is the component material of chief value, * * *.

The record before us makes it certain that the imported marbles respond literally to the terms of paragraph 97, supra, for they are slabs or paving tiles of marble, containing not less than four superficial inches each, from one to one and a half inches in thickness, and in part rubbed, all as described in that paragraph.

The board, however, based its decision upon a former ruling made by it in the case of H. Bishoff & Co. (Abstract 36904), wherein certain marble slabs or tiles were refused classification under paragraph 97, and were held to be dutiable as manufactures of marble unde paragraph 98 of the same act. The following reason was given by the board in that case as the basis of its decision:

These pieces of marble have been cut to particular dimensions and have a specific use as a whole and not separately.

In United States *v.* Dudley (174 U. S. 670) the United States Supreme Court said:.

Where a manufactured article, such as sawed lumber, is usable for a dozen different purposes, it does not ordinarily become a new manufacture until reduced to a condition *where it is used for one thing only.* So long as "dressed lumber" is in a condition for use for house and shipbuilding purposes generally, it is still "dressed lumber"; but if its manufacture has so far advanced that it can only be used for a definite purpose, as sashes, blinds, moldings, spars, boxes, furniture, etc., it becomes a "manufacture of wood."

We are constrained to disagree with the decision now upon appeal. It appears without contradiction that the tiles in question were stock tiles, and that in fact they were not cut to particular dimensions, nor did they have a specific use as a whole instead of separately. It is true that they were purchased by the appellant with reference to the particular floors into which they were to be laid, and that their shapes, sizes, and colors were selected with that end in view. It is doubtless also true that only such quantities of tiles were purchased and imported as were necessary for the construction of the particular floors then under construction. But, nevertheless, they were no more when imported than merely marble tiles designed to be laid into certain floors. As such they were material for the construction of those floors and were not themselves tile floors in a "knockdown" condition. Furthermore, these tiles had not been manufactured or altered so that they could be used only as parts for the particular floors in question. They were and they remained merely marble paving tiles, in such sizes, shapes, and colors as were suitable for the uses of the appellant.

There was but a single witness who testified before the board, and the following extracts from his testimony sustain the foregoing statements:

Q. What specifications as to size did you give Messrs. Fevre & Co.?—A. Well, when I negotiated with Fevre & Co. on that, I just gave the size of these spaces at the building, and asked him what he could sell me—he showed me a sample—and at what price of this stock tile. He then gave me the price and produced these drawings—these four drawings. There are approximately fifteen floors of each one of these drawings.

Q. That is, blue prints marked in lead pencil "A," "B," "C," and "D?"—A. Yes, sir.

Q. What was the purpose of making these blue prints?—A. Just to show us what he had to offer us, and at what price, and how it would fit into the space we were going to use it for.

\* . \* \* \* \* \* \*

Q. Now, the size of these tiles—are they according to your specifications?—A. No, that is stock tile, manufactured by Fevre, who shipped all of those himself. He says, "We will sell you this stock tile, and here are the sizes; and we will make them into drawings, showing you how they work in the spaces." We have nothing to do with the sizes.

\* \* \* \* \* \* \*

Q. Was there anything about this marble to prevent its being laid anywhere else than at 300 Park Avenue?—A. All I would have to do would be to get the border and I could lay it in this room.

There is no reason for believing that Congress intended to exclude from the enumeration of "paving tiles of marble" in paragraph 97 such stock tiles as would literally come within its terms, but which were ordered in sizes, shapes, colors, and quantities adaptable to the construction of particular or specific floors.

The decision of the board overruling the appellant's protest is therefore reversed, and the case is remanded accordingly.   *Reversed.*