(C.D. 2415)

MORRIS FRIEDMAN *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 28, 1963)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *John W. Douglas*, Assistant Attorney General (*Mollie Strum* and *James F. O'Hara*, trial attorneys), for the defendant.

Before OLIVER and WILSON, Judges

WILSON, Judge: The merchandise in the case at bar consists of certain Philippine mahogany slats or sticks imported in the following dimensions:

$$\frac{7}{8}'' \times \frac{1}{10}'' \times 80''$$
$$\frac{7}{8}'' \times \frac{1}{10}'' \times 96''$$
$$\frac{15}{16}'' \times \frac{1}{10}'' \times 80''$$
$$\frac{15}{16}'' \times \frac{1}{10}'' \times 96''$$

A sample representative of the merchandise involved consisting of two pieces of wood but which as imported was in one piece, which had been broken up for convenience of inspection, was received in evidence as plaintiff's exhibit 1 (R. 5). A catalog, illustrating articles produced from material such as the imported slats, depicting folding doors and room dividers "made of grained Philippine Mahogany interwoven with Nylon-Filled Vinyl," was received in evidence as plaintiff's illustrative exhibit 2.

The merchandise was classified under paragraph 412 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373 and T.D. 52476, at the rate of 16⅔ per centum ad valorem as manufactures of wood, not specially provided for. Plaintiff contends that the merchandise is properly free of duty under paragraph 1803(1) of said act, as amended, as sawed lumber, not further manufactured than planed, and tongued and grooved, taxable under section 4551(1) of the Internal Revenue Code; or properly dutiable at 10 per centum ad valorem under paragraph 1558 of the act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, as articles manufactured, in whole or in part, not specially provided for; or properly dutiable under paragraph 405 of the act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, at 10 per

centum ad valorem as either wood, unmanufactured, not specially provided for, or as "Veneers of wood."

Plaintiff called as its witness Mr. Joseph Rosenfeld who stated that he is president of Acme Venetian Blind and Window Shade Corp., the consignee of the merchandise here involved, manufacturer of folding doors, room dividers, window draperies, and window shades of woven woods (R. 5–6). Mr. Rosenfeld, who, it appears, had seen merchandise such as that imported being manufactured in Japan and by his own concern in this country, described its production as follows:

A. The logs are pulled in from the water. They are taken and put on a sort of a dolly and cut——

Q. How big are the logs?—A. Various diameters. I have seen them from two feet up to four feet in diameter, approximately. The logs are about eight feet long and about seven and eight feet according to my size that I order. And the logs are put on this dolly and a big saw that's a band-type saw cuts it into timbers four inches wide by as thick as the diameter of the tree. Then it is laid on its side and the same saw slices—it saws pieces four inches wide by about one-quarter of an inch thick. These pieces flap over. They are four inches wide and they just flap over. They are then taken and put into a little planer machine. Those are the machines I brought back from Japan. They are put into the planer machine and out of the four inch board we get four individual sets of seven-eighths pieces that come out of the machine. That's the operation. [R. 8–9.]

Plaintiff's witness further testified that these sticks are sanded and then painted, after which they are inserted into a loom and woven with either fancy yarns of colors or vinyl plastic. "The yarn or plastic is on a bolt known as a warp on the rear of the loom. Either of those materials come through the loom, and then these slats are inserted as the filler to make a woven product. And it just rolls up as a whole roll. And from that point it is then cut into pieces to make various items" (R. 12–13). The witness stated that merchandise like plaintiff's exhibit 1 is not sold in its condition as imported but is always "processed" before use; that the slats are not dedicated for a particular use, but are employed to make various items, such as shades, room dividers, folding closet doors, and screens.

On cross-examination, plaintiff's witness agreed that the edges in plaintiff's exhibit 1 do not have the "straight saw cut" but that the edges are rounded—"Slightly, very slightly." (R. 13.) He further stated that when ordering the imported slats, he orders a particular size—"⅞ and $^{15}\!/_{16}$ and 80 inch long or 96 inch long"—and that he does not bring in other sizes for other uses (R. 14). The witness then testified that four different sizes are cut, namely, ¼ inch, $^{7}\!/_{16}$ inch, ⅞ inch, and $^{15}\!/_{16}$ of an inch in width (R. 15); that, usually, the larger stick, the 96-inch length, is used as a room divider, "Going from ceiling to floor" (R. 17–18).

On redirect examination, Mr. Rosenfeld testified as follows:

RQ. So it's really just the planing operation which also makes the slightly know how that is done?—A. Yes. This small machine such as I bought myself from Japan and brought back is a small planer and it divides that four-inch piece into four individual ones like that. And as they are coming out of there these edges are rounded at the same time. That planer has a little separating bar that has a little eased edge on the steel planer, and as it comes out it comes out with that edge on it.

RQ. So it's really just the planing operation which also makes the slightly rounded edge?—A. Yes, sir.

The witness also testified that these sticks or slats are frequently cut down from the lengths as imported—"Anywhere from two feet, the size of residential windows, from two feet, three feet, four feet, five feet on up" (R. 19–20). A catalog illustrating the roll-up type of screen made from merchandise like plaintiff's exhibit 1 as to which plaintiff's witness testified that a seven-sixteenths inch, wide size slat, was used, and which slat had been cut down from 80-inch sticks to "roughly four feet," was received in evidence as plaintiff's illustrative exhibit 3 (R. 20–21).

Mr. John E. Hough, president and general manager of the Hough Manufacturing Corp., Janesville, Wis., which manufactures slats such as here imported, as well as importing them from Japan, testified for the defendant. The witness, describing the production of merchandise such as plaintiff's exhibit 1, testified as follows:

A. In the first step luaun logs are sawed into dimension lumber, approximately four inches thick by eight, ten or twelve inches wide, in approximately 80, or 8-foot lengths, on a saw mill, band saw mill.

In the second step this dimension lumber is resawn into sawed veneer approximately a quarter inch thick and four inches wide, on a band saw.

The third step, the veneer is molded into these slats on what I would term a two-headed motor.

\* \* \* \* \* \* \*

\* \* \* the veneer is run through the molder, and four pieces which are separated, smoothed and the corners rounded, two cutter heads are employed; one cuts down halfway through, one smooths and cuts the rounded corners and cuts halfway down through the slat, and the second performs the same operation from the under side, so that the product is four shapes or molded slats.

The witness gave it as his opinion that merchandise such as plaintiff's exhibit 1 could not have been produced on a "planer," stating that a planer uses a flat, smooth surface on rough lumber, whereas the slat here under consideration "has a rounded corner or edge, which is produced by the contour of a molder knife" (R. 35–38).

Defendant's witness further testified that his company manufactures merchandise such as that imported into folding slatted doors, screens, and shades and that he knew of no other use to which such

merchandise is put (R. 39). He had never heard such merchandise called "dressed lumber" in the trade and expressed the opinion that plaintiff's exhibit 1 was not "veneer" in its present state, because "it has been further manufactured by shaping into this slat form" (R. 40–41).

On cross-examination, Mr. Hough agreed that material, such as plaintiff's exhibit 1, in addition to the uses previously indicated by him, is also used for various other purposes when made in woven form (R. 44–45). Describing the weaving process, the witness testified as follows:

A. This slat, this type of slat is woven in a loom, either with tape or cord, to make a woven slatted fabric. The fabric is then sold either as door, room divider or shade form by attaching, by cutting into proper lengths and attaching appropriate hardware. This might be, in the case of a room divider or door overhead fasteners and glides, to permit it to operate on a track, with the slats vertical. [R. 47.]

\* \* \* \* \* \* \*

THE WITNESS: It is not basket weaving of slats in any instance. This is weaving of slats and tapes. The interweaving is of tapes and slats. The tapes are the same widths as the slats \* \* \* [R. 50].

Mr. Hough further testified that these slats are sealed with a primary coat and then painted, after which they are ready for the loom (R. 50–51). He stated that articles, such as plaintiff's exhibit 1 in the 80-foot lengths, are not ordinarily used in their length as imported but are usually cut down in the weaving process to approximately 78½ inches before use. The same cutting process prevails with respect to the 96-inch importation, the cutting averaging between 1 and 2 inches. (R. 53–54.)

On redirect examination, Mr. Hough explained that the cutting of the slats "is performed to give the top and bottom of the finished product a neatly trimmed appearance; without the cutting there would be a certain amount of unevenness which would detract from the appearance of the product, and therefore, in the process of weaving both the top and the bottom of the panel, the woven material, is trimmed to make it neat and uniform in appearance." (R. 55.)

Plaintiff's witness, however, on being recalled to the stand, testified to the effect that the cutting process of articles like plaintiff's exhibit 1 was performed prior to the weaving process, stating as follows:

A. We cut them prior to the finishing of a slat, that is, the painting and the tumbling and sanding. [R. 56.]

This court and our appellate court have previously passed upon the question as to what constitutes "manufactures of wood" (paragraph 412), "sawed lumber" (paragraph 1803), "articles manufactured," not specially provided for (paragraph 1558), and "wood, un-

manufactured" or "veneer of wood" (paragraph 405). Plaintiff and defendant, in their briefs, have directed our attention to a number of cases involving the classification of various articles claimed dutiable under the above-enumerated paragraphs of the tariff act, which are hereinafter referred to in our present determination.

In *United States* v. *Dudley*, 174 U.S. 670, certain sawed lumber or wood, which had been planed on one side and tongued and grooved with the use of what is known as a "flooring machine," was assessed for duty under paragraph 181 of the Tariff Act of 1894 as "manufactures of wood." Plaintiff therein claimed the merchandise properly free of duty under paragraph 676 of said act for "sawed boards, plank, deals, and other lumber, rough or dressed." The boards which were adaptable for such purposes were known by the specific designation of "flooring," "ceiling," or "sheathing." The Supreme Court, pages 672–673, in holding the merchandise properly dutiable as dressed lumber stated:

* * * Where a manufactured article, such as sawed lumber, is usable for a dozen different purposes, it does not ordinarily become a new manufacture until reduced to a condition where it is used for one thing only. So long as "dressed lumber" is in a condition for use for house and ship building purposes generally, it is still "dressed lumber"; but if its manufacture has so far advanced that it can only be used for a definite purpose, as sashes, blinds, moldings, spars, boxes, furniture, etc., it becomes a "manufacture of wood." * * *

In the case of *C. S. Emery & Company* v. *United States*, 41 Cust. Ct. 7, C.D. 2013, certain "knotty pine paneling" was assessed for duty under paragraph 412 of the Tariff Act of 1930, as modified, as manufactures of wood, not specially provided for, and was claimed properly classifiable under paragraph 401 of the said act as "sawed lumber * * * not specially provided for; * * * if of * * * pine"; or under paragraph 405 of the tariff act, as modified, as "Wood, unmanufactured, not specially provided for"; or under paragraph 1558 of said act, as modified, for nonenumerated manufactured articles. The boards were sawed to the requisite width, after which they were cut off square at each end, and then put through a planing machine to plane two sides of the board, place a tongue on one edge and a groove in the other edge, and bevel both edges. The paneling was also put through a drum sanding machine, which sanded one side of the paneling.

Adopting the reasoning set forth in the *Dudley* case, *supra*, this court, in the *Emery* case, page 10, stated:

From the record in the case at bar, it seems that paneling is a recognized name for a form of lumber, rather than the name of a separate and distinct new article made from lumber, and that it is bought, sold, and used in the same manner as lumber. * * *

* * * * * * *

The merchandise at bar is lumber or wood which has been manufactured beyond the condition of being only planed, tongued, and grooved, which would have left it within the purview of paragraph 401, *supra*. The additional process of manufacture, sanding, however, did not convert it into a manufacture of lumber or wood, but merely left it lumber or wood, manufactured. There being no more specific provision for such material, it takes classification and duty under the catchall provision in paragraph 1558, *supra*, for nonenumerated manufactured articles.

In our opinion, the merchandise here imported is not properly free of duty under paragraph 1803(1) of the tariff act as sawed lumber, not further manufactured than planed, and tongued and grooved, as claimed. It has passed beyond that stage. While plaintiff's witness testified that the rounded edges appearing on the imported slats were made by a "planing operation," he stated that he was not qualified as a woodworker and admitted that he did not know the difference between planing and shaping. Defendant's witness, on the other hand, who, as indicated by the record, has had experience in the wood industry for a great many years, testified that the machine used to produce slats, such as here in question, was not a "plane" but rather a two-headed molder. The condition to which the imported pieces of wood have been reduced are something more than planed. "It is only necessary that the article be so processed that it be removed from its crude or primary state, though it remain a variety of the original material, to be manufactured." (*United States* v. *C. J. Tower & Sons*, 44 CCPA 1, 7, C.A.D. 626.) The articles here have been removed from their crude state and, by further processing, have been advanced beyond the planing stage. Accordingly, for classification purposes, they are prevented from inclusion in paragraph 1803, *supra*.

Plaintiff has produced no proof in support of its claim that the slats in issue are properly dutiable under paragraph 405 of the tariff act, as modified, *supra*, as veneers of wood. Commercial designation of the imported slats as "veneers" of wood has not been established, it further appearing that the involved merchandise "is not veneer, either in the ordinary meaning of the word or in its use." *United States* v. *Briggs Manufacturing Co.*, 14 Ct. Cust. Appls. 1, T.D. 41526. Plaintiff's claim that these articles should be held dutiable under paragraph 405 of the act, as modified, as wood, unmanufactured, not specially provided for, is also without merit. The processes to which the imported slats have been subjected, as heretofore indicated, indicate clearly that they have been "manufactured" into their imported condition. *United States* v. *C. J. Tower & Sons, supra*.

In our opinion, the merchandise here imported is properly classifiable as manufactures of wood under paragraph 412 of the Tariff Act of 1930, as modified, rather than under paragraph 1558 of the act, as "articles manufactured, in whole or in part, not specially provided for," as claimed by the plaintiff. The record discloses that the im-

ported slats of wood are ordered by specifications in particular sizes (R. 14). Admittedly, these slats are used specifically for folding slatted doors and screens and shades, the evidence indicating that they are not used for wood manufactured purposes generally. The only cutting of the slats required after importation was to the extent of about 1½ inches to give an even edge to the woven screens or door or blind produced. Such minor cutting process in no way changes the status of the slats at bar from that of manufactures of wood. The fact that these slats are used as components in the fabrication of articles, such as folding doors, room dividers, screens, and shades, does not render them mere "materials" of wood so as to subject them to classification under paragraph 1558 of the tariff act, as modified, as manufactured articles, not specially provided for. In *A. H. Ringk & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 132, T.D. 42769, certain sheepskin leather there in question had been so designed and processed as to be dedicated to the manufacture of a particular class or kind of articles, viz, pocketbooks or handbags, it further appearing that such merchandise was fit for no other use. The court, in the *Ringk* case, *supra*, held merchandise of the latter character not entitled to free entry as "leather forms" suitable for conversion into manufactured articles (paragraph 1606 of the Tariff Act of 1922), but properly classifiable as manufactures of leather, because such merchandise "consists of leather forms which in themselves constitute manufactures of leather." Significant in our present determination was the language of the court in that case, page 136, as follows:

The word "manufacturers" is not always limited to the ultimate, final, completed article of or for which the one in question may be material. It includes materials which have been "subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product. * * * *the finished product of one manufacture* thus becoming the material of the next in rank." * * * It includes articles which, because of the extent to which they have been processed, have "attained a distinctive name, character, or use, different from that originally possessed by the material or materials" from which they were made. *Ishimitsu* v. *United States*, 11 Ct. Cust. Appls. 186, T.D. 38963. [Italics by the appellate court.]

While the imported wooden pieces are inserted as the filler to make a woven product, they in themselves are just as much completed articles or "manufactures" as is the hardware also employed with the woven articles for their indicated ultimate use. Unlike the situation which prevailed in the case of the knotty pine paneling with which the court was concerned in the *Emery* case, *supra*, the pieces of wood or slats here under consideration are something more than a form of lumber or wood manufactured, having been so far advanced to completion as an article that in themselves they could only be used for definite purposes, viz, with the woven tape, and not for wood purposes

generally, and thus have become "manufactures of wood." *United States* v. *Dudley, supra.*

Plaintiff, in this case, relies mainly upon the holding of the court in the case of *Clarence S. Holmes, a/c Best Products Mfg. Co.* v. *United States,* 44 Cust. Ct. 111, C.D. 2161. There, so-called "rough plates" of maple, consisting of pieces of wood glued together along lengthwise edges, so that the resultant product was in widths in excess of 9 inches, were held properly dutiable under paragraph 1558 of the Tariff Act of 1930 as nonenumerated manufactured articles, rather than as manufactures of wood under paragraph 412 of the act. In so holding, the court, page 113, stated:

> On the other hand, we are of the opinion that the processes to which the maple plates at bar had been subjected prior to importation did not alter their status from that of a wood material to that of a manufacture of wood. We think the situation is very like that which obtained in the case of *C. S. Emery & Company* v. *United States,* 41 Cust. Ct. 7, C.D. 2013 * * *.

The situation that obtained in the *Holmes* case, *supra,* is distinguishable, in our opinion, from that in the case at bar. The record therein disclosed that maple lumber was not produced by processes of sawing, planing, tonguing, and/or grooving in widths in excess of 9 inches. The court, accordingly, held that the "rough plates" therein involved, produced by edge gluing pieces of maple lumber so that the resultant product was in widths in excess of 9 inches were not within the purview of paragraph 1803, *supra,* providing for sawed, planed, tongued, and/or grooved lumber. On the other hand, the court therein was of the opinion that the processes to which the maple plates there in question had been subjected prior to importation did not alter their status from that of a wood material to that of a manufacture of wood. In so holding, the court, page 113, stated:

> * * * It seems clear that none of the merchandise was, in the condition in which it was imported, dedicated to the manufacture of any specific article, nor was it even partly finished for that purpose, but was available as wood material for use in any application permitted by its dimensions.

That is not the situation in the case at bar where the merchandise was ordered in certain specific dimensions, the record herein further showing that the imported slats were used for definite and particular purposes and not used generally as wood material. Accordingly, we are of opinion that the holding of the court in the *Holmes* case, *supra,* is not controlling in the case at bar.

On the record presented herein and the applicable authorities, we hold the merchandise here involved properly dutiable under paragraph 412 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by T.D. 52476, at the rate of 16⅔

per centum ad valorem as manufactures of wood, not specially provided for, as classified. The protest claims in this case are hereby overruled. Judgment will issue accordingly.