(C.D. 2427)

C. J. Tower & Sons of Niagara, Inc. *v.* United States

United States Customs Court, Third Division

(Decided January 20, 1964)

_Barnes Richardson & Colburn_ (_Joseph Schwartz_ and _Earl R. Lidstrom_ of counsel) for the plaintiff.

_John W. Douglas_, Assistant Attorney General (_Harold L. Grossman_, trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: Plaintiff is the importer of record of certain dead birds, which are described in the invoice as frozen geese. They were imported from Canada in 1960.

The collector assessed duty at the rate of 10 cents per pound, under an enumeration in paragraph 712, Tariff Act of 1930, as geese, prepared or preserved in any manner, not specially provided for. Plaintiff's protest claims classification under the same paragraph, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, with duty at 3 cents per pound under the provision for geese, dressed and frozen.

The respective provisions are as follows:

Paragraph 712:

Birds, dead, dressed or undressed, fresh, chilled, or frozen: Chickens, ducks, geese, and guineas, 10 cents per pound; turkeys, 10 cents per pound; all other, 10 cents per pound; all the foregoing, prepared or preserved in any manner and not specially provided for, 10 cents per pound.

Paragraph 712, as modified:

Birds, dead, dressed or undressed, fresh, chilled, or frozen:
    Chickens, ducks, geese, and guineas_____ 3¢ per lb.

The questions here are, first, how were these geese processed and, second, was this processing within the meaning of the tariff term for geese, dressed.

Considerable testimony was adduced both as to the manner of processing these geese and as to what the meaning of the term "dressed" is in the poultry trade.

There is no dispute as to certain of the facts of record. These birds are geese, and geese are enumerated in paragraph 712. The geese of this importation were killed, bled, and plucked. They were eviscerated. The heads and feet were removed. The geese were then frozen.

The controversy is as to whether frozen geese that have been eviscerated, and the heads and feet removed, are specially provided for in paragraph 712, as geese, dressed and frozen, as plaintiff claims;

or whether evisceration and the removal of heads and feet extend the processing of these geese beyond the scope of the tariff term "dressed," as defendant contends, so that they are not specially provided for and, therefore, fall into the provision for geese, prepared or preserved in any manner, not specially provided for.

The dressing of poultry, including geese, is a process of preparation. Dressing is the form of preparation of geese for which Congress has made special tariff provision. Preparation of geese in some manner that is not within the tariff term "dressed" creates an article for which Congress has made separate provision.

Mr. Maxwell Anthony Nothstein, of Winnipeg, Manitoba, Canada, testified for plaintiff. He described himself as the poultry trader for R. A. Nothstein, Ltd., brokers who buy and sell poultry, eggs, cheese and butter. They sold these geese.

The witness was in charge of "the poultry end of the business" for 5 years prior to 1962, when he testified. Mr. Nothstein stated, on cross-examination by defendant, that the trade now refers to an eviscerated bird as being dressed, but that there is another trade term, birds which are called "New York dressed" birds. "New York dressed" birds have had "the feathers removed, but not the insides"; and to order such a bird, one must specify "New York dressed." "If it is only specified dressed, you would assume it is eviscerated." (R. 18.)

On redirect examination, Mr. Nothstein explained that "fully dressed" poultry is a term which also is used for eviscerated poultry. (R. 22.)

Mr. Lee E. Beaird, called by plaintiff, testified that he is president of Beaird Cremeens Foods Corp., of New York, engaged in the business of distributing foodstuffs, including dressed poultry. He has been in that line of business since August 1931. Prior thereto, as a boy, he had worked after school hours in a poultry processing plant. The business of Beaird Cremeens includes the processing and distribution of poultry "all over the United States." (R. 30.)

The shipment of geese that are here involved was consigned by the Canadian exporter to Mr. Beaird's company in New York.

The witness testified that he has been handling eviscerated geese since 1939. The terms dressed, table dressed, fully dressed, drawn, and eviscerated are synonymous terms in the poultry industry. They describe the merchandise of this litigation. Ready-to-cook is another name for the same article. Eviscerated geese are recognized in the trade as dressed geese, and have been so recognized "since about 1958." (R. 31.)

Defendant adduced the testimony of Mr. W. B. Loucks, who identified himself as president and treasurer of Wadley & Co., Inc., wholesale distributor of all types of dressed poultry, including turkeys,

ducks, and geese. His experience in the poultry business is nation-- wide, and extends over a period of 51 years.

Mr. Loucks emphasized the fact that while the term "dressed poultry" is old, the term "eviscerated" is something new. He stated: that formerly what was meant by "dressed poultry" was "New York dressed poultry." People shortened this longer term to "dressed," in order to differentiate the article from live poultry. Over a period of time, a change took place in the trade, and poultry was eviscerated even before the United States Government provided for the inspection of eviscerated poultry.

This is now called ready-to-cook poultry. Dressed poultry, in the experience of Mr. Loucks, is any type of poultry that is not live. "New York dressed" means poultry that is killed, bled, and plucked. Ready-to-cook poultry, which is eviscerated, is a division of dressed poultry. It is fully dressed.

However, by 1960, there was only one type of dressed poultry in the trade, whereas, in 1955, there had been "half a dozen nomen-- clatures for dressed poultry, drawn." (R. 48 to 52, inclusive.)

It is clear from the testimony adduced on both sides that the prac-- tice of eviscerating poultry for Government inspection was formerly frowned upon by the Government, for health reasons; that now, and for some years past, eviscerated poultry has been Government in-- spected; that this change in Government inspection policy was part of the trend in non-live poultry to eviscerated poultry, now designated in the trade as ready-to-cook, such as the geese of this litigation.

Regulations of the United States Department of Agriculture do not control tariff meaning. *United States* v. *J. H. Brown et al.*, 46 CCPA 1, C.A.D. 686; *United States* v. *Mercantil Distribuidora et al.*, 45 CCPA 20, C.A.D. 667. Such regulations may throw light on trade practices and help establish common meaning, when that is a controverted issue. Here, both plaintiff's and defendant's witnesses agree as to what poultry trade practice was, both in 1930 and in 1960.

However, it is worthy of mention that regulations of the Department now use both the term "dressed poultry" and the term "ready-to-cook poultry," and that the definition of "dressed poultry" continues to be that identified by all witnesses, including defendant's, as what the trade knows as "New York dressed poultry."

There are cases construing the term "dressed" as applied to other articles.

Webster's New International Dictionary, second edition, 1956, as-- signs to the verb "dress" a number of meanings. The fifth definition is the one pertinent to our problem. "Dress" is there defined:

In general, to put in good order; to make ready; to arrange; to prepare for use or service; specif.: a To prepare for cooking or for the table; as, to *dress*

a fowl.  **b**  To prepare for market; as, to *dress* beef; * * *.  [Emphasis copied.]

Under the definition of "poultry" (which includes geese), the dictionary lists a number of combinations and phrases which use the word "poultry." One such is "poultry dresser." The noun "dresser" includes, by definition, a "table or bench on which meat and other things are dressed, or prepared for use."

The definition of "carcass" (a word used in Department of Agriculture regulations) includes the following:

A dead body, * * * with butchers, the trunk of a slaughtered animal, after the hide, *head*, limbs, *edible organs*, and *offal have been removed; the dressed body*. [Emphasis supplied.]

In the dictionary sense, then, it seems clear enough that the dressing of a dead bird is the processing usual by way of preparing the whole bird for cooking or for the table; that, when so prepared, the bird, or fowl, is dressed.

An early and much cited case, construing the tariff term "dressed," is *Cone et al.* v. *United States*, 5 Ct. Cust. Appls. 491. Our appeals court said:

* * * the first inquiry is whether these goods are dressed within the meaning of this paragraph. The word "dress" or "dressed" as applied to such articles must relate to some form of preparation. The question as to the extent of that preparation is the one for solution here.  [P. 493.]

The merchandise in the *Cone* case was piassava, a vegetable fiber, which had been cut to specified lengths and also dyed, sorted, and bunched according to length. The court said: "* * * it is enough for the purpose of this case to find that that process constitutes a dressing." (P. 494.)

Even earlier, the United States Supreme Court, in *United States* v. *Dudley*, 174 U.S. 670, had distinguished between processing that makes a material dressed and processing that goes beyond dressing, so as to constitute manufacture. The material in the *Dudley* case was sawed boards, planed on one side, tongued, and grooved. The Court found that these boards should be classified as *dressed* lumber, rather than as a manufacture of wood. There was in that record a conflict of testimony, described by the Court as follows:

Forty-seven witnesses were examined before the board of general appraisers, twenty-three of whom testified that lumber which had been planed, grooved, tongued or beaded was still "dressed lumber," even when finally shaped for the carpenter to put together in roofing, flooring, ceiling, etc., and twenty-four testifying, in substance, that the term was only applicable to such as had been merely planed upon one or both sides, and brought to an even thickness. It was admitted by witnesses upon both sides that in ordering such articles the term "dressed lumber" would not sufficiently describe them, and that they were usually ordered by description or by their specific designation, as flooring, etc. [P. 672.]

These are decisions antecedent to the enactment of the Tariff Act of 1930. They set forth concepts of the tariff term "dressed" of which Congress may be presumed to have been aware at the time it enacted the Tariff Act of 1930.

We do not find that a commercial designation of poultry, dressed, different from the common meaning, has been proven. Indeed, it would appear that both parties rely on the common meaning of the term.

What Congress had in mind in providing an enumeration for poultry, prepared or preserved, not specially provided for, is stated in the Summary of Tariff Information, 1921. At page 660, we find the following material, under the heading "Birds, dead":

BIRDS, DEAD.

\*      \*      \*      \*      \*      \*      \*

*Important changes in classification.*—Parts of two paragraphs of the act of 1913 (227 and 229) have been combined, to avoid uncertainty with respect to the scope of "game" birds; the clause regarding containers has been eliminated as unnecessary and a separate provision.has been made for poultry, etc., prepared or preserved, to take care of a wide range of high-priced specialties such as *paté de foie gras*, and also such products as canned chicken, goose liver paste, etc. [Emphasis copied.]

We find nothing in the proceedings of Congress, relative to the Tariff Act of 1930, indicating a congressional intent to depart from the 1922 understanding of identical language which was incorporated into the later act. Poultry, prepared or preserved, includes "a wide range of high-priced specialties such as *paté de foie gras*, and also such products as canned chicken, goose liver paste, etc." Dead birds may be either dressed or undressed. They may also be fresh, chilled, or frozen.

It seems evident that trade practice in 1930 did not usually include evisceration as a part of the process of dressing, but it is also clear that dressing without evisceration is unusual now. We find no basis for holding that Congress intended to tie the meaning of the term "dressed" to market practices in the poultry trade, as they existed in 1930. As our appeals court pointed out in *United States* v. *Victoria Gin Co., Inc., et al.,* 48 CCPA 33, C.A.D. 759:

\* \* \* We may assume that Congress knew that the laws of supply and demand are sometimes rudely disturbed by wars or other economic upheavals and that sudden and drastic changes in the marketability of many products follow, *often resulting in a demand for things theretofore considered of little value.* [P. 37.] [Emphasis supplied.]

That the development of food freezing since 1930 has effected drastic changes in food marketability is too well known to require comment.

Congress could have specified the precise extent to which the dressing of dead birds was to constitute dressing for tariff purposes. It did not do so. It chose to use a general descriptive term which included, in the common meaning of the term, more than the limited meaning for which defendant contends.

It is not entirely clear whether defendant relies on the fact that the heads and feet have been cut off, as the basis of a contention that the geese here are not whole birds and, therefore, are of the order of the meats and specialties contemplated by Congress in the provision for poultry, prepared, not otherwise specified. If so, we do not agree. Dressing, that is to say, preparation of the whole bird for cooking or table, may include removal of those parts not usually deemed edible, such as the head, feet, and offal.

One final point remains to be mentioned. Each of the parties argues that only the construction for which it contends will give significance and meaning to the statutory language; that, contrariwise, the other party's proposed construction would render the tariff provision "null and void, superfluous and redundant," as defendant's brief asserts. It is obvious that both of these positions cannot be correct.

Indeed it is the responsibility of the court to give language a significant meaning, and not to interpret statutory language so as to make it nugatory. On the record before us, it appears that the narrow definition of the term "birds, dead, dressed, frozen," for which defendant argues, is a construction that would leave that tariff category not only substantially meaningless, but also at variance both with common meaning and trade practice.

The protest is sustained. Judgment will be entered accordingly.